UNITED STATES of America, Plaintiff-Appellee,

v.

George Vernon MAY, Defendant-Appellant.

No. 24926.

United States Court of Appeals, Ninth Circuit.

Sept. 22, 1970.

Rehearing Denied Oct. 13, 1970.

William N. Fielden, LaJolla, Cal., for defendant-appellant.

Harry D. Steward, U. S. Atty., Joseph A. Milchen, Asst. U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BARNES, JERTBERG and ELY, Circuit Judges.

JERTBERG, Circuit Judge:

Following trial to a jury, the appellant, George Vernon May, and co-defendants Mosbacher and Ormond, were convicted on each count of a two count indictment. Each count charged a violation of 21 U.S.C. § 176a, on or about January 20, 1968. On September 30, 1968, appellant was committed to the custody of the Attorney General for imprisonment for a term of five years on each count, with the sentences on both counts ordered to run concurrently.

Count One charged that appellant and his co-defendants, with intent to defraud the United States, knowingly smuggled into the United States from Mexico approximately seventy-five pounds of marijuana, which marijuana had not been presented for inspection, entered and declared as provided by 19 U.S.C. §§ 1459, 1461, 1484 and 1485.

Count Two charged appellant and his co-defendants, with intent to defraud the United States, knowingly concealed and facilitated the transportation and concealment of the same quantity of marijuana, which they knew had been imported and brought into the United States contrary to law.

Only the appellant May is involved in this appeal. He does not question the sufficiency of the evidence to sustain the conviction. His main contention is that the district court erred in the giving of the following instructions to the jury, to the giving of which he made no objection:

(a) In connection with this statute, [21 U.S.C. § 176a] when an accused on trial is proved beyond a reasonable doubt to have been in possession of marijuana, such possession authorizes the jury to draw an inference that the marijuana was imported contrary to law and to draw a further inference that the accused had knowledge of such unlawful importation, unless the evidence in the case provides a satisfactory explanation for the defendant's possession of the marijuana.

(b) What the statute [21 U.S.C. § 176a] does do, however, is to create an inference in favor of the United States. Thus, if you should find from the evidence beyond a reasonable doubt that there was possession as that term will be defined to you, on the part of the defendants, of the marijuana referred to in the indictment, such possession creates a permissible inference of guilt as charged in the indictment.

(c) When an accused on trial is proved beyond a reasonable doubt to have been in possession of marijuana, such possession authorizes the jury to draw an inference that the marijuana

was imported contrary to law, and to draw a further inference that the accused had knowledge of such unlawful transportation or importation, unless the evidence in the case provides a satisfactory explanation for the defendant's possession of the marijuana.

Appellant's only other contention on this appeal is that the district court erred in denying his motion for a mistrial because of the Government's claimed failure to comply with the pretrial discovery order made by the district court.

In Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (decided May 19, 1969, over seven months after appellant had been sentenced), the court held unconstitutional that part of 21 U. S.C. § 176a permitting the jury to presume or to infer that the defendant knew that the marijuana had been illegally imported from proof that he had been in possession of the marijuana.

In United States v. Scott, 425 F.2d 55 (9th Cir. 1970), the majority of this Court, sitting *en banc*, concluded that the decision in *Leary*, partially invalidating the presumption, is fully retroactive.

In *Scott*, the majority of the Court also held that Scott's failure to except to the instruction embodying the presumption did not foreclose Scott from asserting the point on appeal.

In the course of the majority opinion in *Scott*, it is stated at page 59:

> "Because Scott's case was submitted to the jury on alternative theories, one of which was the constitutionally invalid presumption, the conviction must be set aside, unless the giving of the instruction under the circumstances of this case was harmless beyond a reasonable doubt. (Harrington v. California (1969) 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; Chapman v. California (1967) 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705.)" [Footnote omitted.]

█ From the teachings of *Leary* and *Scott*, we hold:

(a) that the decision in *Leary*, held retroactive in *Scott*, is applicable to the instant case;

(b) that appellant's failure to object to the giving of the instructions set forth in this opinion does not foreclose him from asserting the point on this appeal; and

(c) that the giving of the above instructions constitutes reversible error unless it can be said that under the evidence in this case such error is harmless beyond a reasonable doubt.

Such holding appears to be consonant with the views stated by the Government in its reply brief, to wit:

> "Although the statutory presumption itself was not given as a part of the instructions in this case, it seems clear that the jury was instructed that the statute permitted them to draw the inference of knowledge of illegal importation from possession by May of the contraband. With the retroactive application of *Leary*, the giving of the instruction would appear to be reversible error."

Therefore, our task in this case is to determine from evidence in the record, independent of the presumption or inference stated in the court's instructions, whether the giving of such instructions constitutes harmless error beyond a reasonable doubt.

The salient facts stated in the light most favorable to support the judgment of conviction may be stated as follows:

On January 20, 1968, at approximately 10:00 p. m., appellant entered the United States from Mexico, at a Port of Entry at Tecate, California, as the driver and sole occupant of a 1958 Chevrolet. Appellant stated to the Customs Inspector, Patrick Vaughan, that he was a citizen of the United States; that he was bringing nothing from Mexico; and, after routine inspection of his vehicle, including the opening of the automobile trunk, he was permitted to enter the United States. There is no evidence that there was any marijuana or debris in the car.

Appellant proceeded north along Tecate Road, which is the only road running north from the Port of Entry, and was kept under observation by Inspector Vaughan. The car proceeded north approximately one block to a post office, turned around and went east on Thing Road which runs parallel to the International Boundary. After paralleling the border for some distance, Thing Road rejoins Tecate Road.

Inspector Vaughan radioed to Immigration Inspector Henderson and instructed him to maintain observation of the vehicle. The vehicle travelled east on Thing Road, made a U turn and returned to Tecate Road. It travelled north on Tecate Road for about a block, made another U turn, went south, and then turned east on to Thing Road again. On this occasion the right turn indicator was activated and the vehicle stopped for a brief period of from thirty to sixty seconds. The vehicle turned around, went west on Thing Road, and then returned north on Tecate Road.

Located at the point on Thing Road where the vehicle stopped was a foot trail that ran down to the Mexican border.

By using a radio, Inspector Henderson communicated with Inspectors Gray and Lindeman, advising them that the car was making a U turn and pulling out on Thing Road. He told them of the car movements that were being made. The officers set up an interception point at the junction of Tecate Road and Highway 94, a distance of 1.8 miles from the Port of Entry, with one stationary light and two blinking red lights. Another vehicle, a van type vehicle, subsequently entered the United States and proceeded north on Tecate Road. Inspector Henderson observed the movement of this vehicle through his binoculars. The van vehicle made a stop at the interception point.

At about the same time the Chevy vehicle shot around the van vehicle and made no attempt to stop. Pursuit began, and Inspector Lindeman saw objects being thrown from the vehicle. They were green and blue cellophane wrapped.

Inspector Gray got out of the car to pick up the objects. Inspector Lindeman continued his pursuit. After an approximate six mile chase, the Chevy vehicle was stopped. Appellant was driving with co-defendants Mosbacher and Ormond in the rear seat. Appellant asked Inspector Lindeman "Am I under arrest?" and stated "I run the stop light."

When Inspector Lindeman was advised that the objects thrown from the car were marijuana, he placed the three occupants of the car under arrest. The Chevrolet automobile was returned to Tecate, and marijuana debris was found on the seats and on the floor of the car. There were approximately 34 bricks of marijuana and four burlap bags that had been thrown from the fleeing vehicle.

Appellant and co-defendants testified on their own behalf. In brief, appellant stated that the three left Los Angeles the morning of January 20, 1968, in a 1958 Chevrolet automobile belonging to his girl friend; that they arrived at the Agua Caliente race track in Mexico about noon and attended the races; that during the afternoon co-defendants met two young ladies, known to them only by their first names; that the young ladies told them that they lived in the vicinity of Tecate, and would give them a ride to Tecate. Co-defendants arranged with appellant to pick them up at the Tecate post office sometime after the races, and the three would return to Los Angeles. Appellant remained at the race track for some time after the races were over. He then proceeded to Tecate, arriving at the Port of Entry about 10:00 p. m. After reaching the Port of Entry he drove to the post office. Co-defendants were not there, so he turned around on the Tecate Road to Thing Road, drove up Thing Road for a distance, then returned to Tecate Road and when he arrived at the post office his co-defendants were there and the two got into the automobile and proceeded west on Highway 94. He denied seeing the Inspector's automobile set up at the interception point with blinking red lights.

That as he drove on Highway 94 another automobile passed him. As he proceeded on Highway 94, the Chevrolet car started to heat up and after driving several miles he drove to the side of the road to permit the engine to cool off; that on the trip from Los Angeles, on several occasions, he was forced to stop because of an engine-heating problem resulting from a split in the radiator hose; and that he either taped the hose, put in water, or permitted the engine to cool.

The three sat in the car for five or ten minutes when the Inspector drove up. He denied that any objects were thrown from the automobile and denied any knowledge of the marijuana picked up by Inspector Gray. He denied asking the Inspector if he was under arrest, and denied that he told the Inspector that he had run the stop light.

Co-defendants testified that the two young ladies drove them to Tecate; that they were cleared through the Port of Entry about 9:00 p. m., and that the girls dropped them off at the Tecate post office. They waited at the post office for about an hour, went to the bathroom in the bushes near the post office, and when they returned appellant picked them up and the three proceeded west on Highway 94. They denied that any objects were thrown from the car, and denied any knowledge of the presence of the marijuana found on the highway. They corroborated appellant's testimony concerning the engine-heating problem.

Appellant's girl friend, the owner of the Chevrolet car, testified that the overheating problem in the Chevrolet had existed for a couple of weeks.

This Court has held in several decisions that the giving of instructions on the presumption or inference contained in 21 U.S.C. § 176a constitutes harmless error beyond a reasonable doubt in instances where the defendant was apprehended at the border crossing and marijuana was discovered on inspection either attached, secreted, or affixed in some manner to the automobile or truck being driven by the defendant. United States v. Simon, 424 F.2d 1049 (9th Cir.

1970); United States v. Pyle, 424 F.2d 1013 (9th Cir. 1970); Plascencia-Plascencia v. United States, 423 F.2d 803 (9th Cir. 1970). See also United States v. Vansant, 423 F.2d 620 (9th Cir. 1970); Gaylor v. United States, 426 F.2d 233 (9th Cir. 1970).

Unlike the above cases, the marijuana in the instant case was not discovered in the possession of appellant at the border crossing, but was found on the highway within ten miles north of the Mexican border. The occupants of appellant's car probably threw it there, but that is a question to be determined by the jury, under instructions free from prejudicial error.

In *Scott, supra*, the arrest of Scott occurred in a bedroom in his apartment at Los Angeles when Scott entered the room carrying a trunk, which he opened and which contained fifty packages of marijuana. At Scott's trial, a Federal Narcotics Agent testified that he and one of Scott's co-defendants went to Scott's apartment to complete a prearranged sale of marijuana. Scott admitted the two into his apartment. Scott told the agent that he had a source of supply in Mexico for one hundred kilos a week. Scott denied making the statement to the agent, denied any complicity in the transaction, and denied that he knew the substance in the package was marijuana.

In *Scott, supra*, at page 60 the opinion states:

"The evidence of Scott's knowledge of illegal importation was not overwhelming. Primarily the Government's proof rested on Gordon's testimony that Scott had told him that he had a Mexican source. Scott flatly contradicted Gordon. The question was thus one of credibility. Did the jury reach that credibility question after it had been effectively told that it need not do so? Would the jury have decided that Scott was lying when he denied those conversations, if it had never heard the presumption? No sure answers to those questions can be found in the record. We there-

fore cannot conclude that the error was harmless beyond a reasonable doubt. (*Compare* Bollenbach v. United States (1946) 326 U.S. 607, 614–615, 66 S.Ct. 402, 90 L.Ed. 350; Note, 'Harmless Constitutional Error' (1967) 20 Stan.L.Rev. 83, 89.)

"That conclusion compels a reversal of Scott's conviction."

In the instant case, as in *Scott*, the case against appellant was submitted to the jury on alternative theories, one of which was the unconstitutional inference or presumption appearing in the above-quoted instructions. Appellant and co-defendants flatly contradicted the testimony of the Government's agents relating to the circumstances surrounding the discovery of the marijuana. They denied all knowledge and complicity in connection therewith. Would the jury have decided that appellant and co-defendants were lying if it had never heard the above-quoted instructions?

Absent the giving of the above-quoted instructions we would, under the evidence in this case, readily affirm the judgment of conviction on the theory advanced by the Government to the jury in its opening statement and closing argument. That theory was that under the evidence the jury could reasonably find beyond a reasonable doubt that appellant had knowledge of the unlawful importation of the marijuana by reasoning that, pursuant to previous arrangement made between appellant and his co-defendants, the marijuana thrown from appellant's vehicle was acquired in Mexico and smuggled into the United States by appellant's co-defendants via the foot trail running from Mexico to the point on Thing Road where appellant activated the right-turn indicator on the car and stopped the vehicle for a brief period, at which point appellant picked up co-defendants and the marijuana. A verdict of guilty in such case would establish that the jury credited the testimony of the agents and discredited the testimony of appellant and his co-defendants.

There is no way for us to tell by what reasoning the jury arrived at the implied finding that appellant had knowledge of the unlawful importation of the marijuana. Did it arrive at such finding by doing what the court stated it was authorized to do, that is, by inferring such knowledge from appellant's possession of the marijuana, or did it, on this issue, resolve the credibility question in favor of the Government?

In the circumstances here present we are unable to conclude that the giving of the instructions was harmless error beyond a reasonable doubt. *Cf.* Wilson v. Anderson, 379 F.2d 330 (9th Cir. 1967), rev'd sub nom. Anderson v. Nelson, 390 U.S. 523, 20 L.Ed.2d 81, 88 S.Ct. 1133 (1968).

Reversed and remanded.