John J. VACCARO, Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 28852.

United States Court of Appeals,
Fifth Circuit.

April 12, 1972.

George Leppert, F. Irvin Dymond, New Orleans, La., Percy Foreman, Houston, Tex., Alto V. Watson, Beaumont, Tex., for petitioner-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., Charles J. Carroll, Mervyn Hamburg, Attys., U. S. Dept. of Justice, Washington, D. C., Will Wilson, Asst. Atty. Gen., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

BY THE COURT:

This case having been heard by the Court en banc pursuant to the order heretofore entered on August 17, 1971, it is ordered that the en banc Court con-

vened to consider this case is hereby dissolved and the case is hereby restored to the docket and reassigned to the original panel of Judges Brown, Gewin and Thornberry.

Before JOHN R. BROWN, Chief Judge, and GEWIN and THORNBERRY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Until May 19, 1969, a jury in a Federal marijuana prosecution involving alleged violations of 21 U.S.C.A. § 176a[1] was likely to be instructed that proof of possession of marijuana was sufficient presumptively to establish the essential element of knowledge that the marijuana possessed was illegally imported into this country. In Leary v. United States, 1969, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed. 2d 57, however, the Supreme Court struck down the 176a statutory presumption[2] as unconstitutionally "arbitrary" and "irrational" for want of an ascertainable relation between the fact proved (possession) and the fact presumed (knowledge of illegal importation).

Since Leary, the path to Federal court has been well trod, as petitioner after petitioner seeks to wrap himself in Leary's protective cloak. John J. Vaccaro, convicted in 1961[3] of violating the discredited and since-superseded[4] statutory mandates of 176a, is one of these, and his case brings us face to face with the difficult, but inevitable, issue of the retroactivity of Leary's § 176a holding. Concluding that Leary must be accorded retroactive application, we reverse the District Court's denial of § 2255 postconviction relief.

*Retroactivity Theory—Another Enigma Wrapped In A Mystery*

Perhaps no other area of Constitutional law is more enshrouded in puzzlement and apparent logical inconsistencies. The most recent example of the disparity is the fragmented Supreme Court decision in Adams v. Illinois, 1972, 404 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202, where only three Justices could join in the Court's opinion denying retroactive application to Coleman v. Alabama, 1970, 399 U.S. 1, 90 S.Ct. 1999, 26 L.

1. 21 U.S.C.A. § 176a provided:

"Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned for not less than ten or more than forty years and, in addition, may be fined not more than $20,000."

2. The presumption was as follows:
"Whenever on trial for a violation of this subsection, the defendant is

shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury."

3. Vaccaro's original conviction was affirmed by this Court in Vaccaro v. United States, 5 Cir., 1961, 296 F.2d 500, cert. denied, 1962, 369 U.S. 890, 82 S.Ct. 1164, 8 L.Ed.2d 289. An unrelated collateral attack is reported at 360 F.2d 606. These opinions give the full factual background. Of primary importance here is simply the fact that Vaccaro was tried upon his plea of Not Guilty, convicted on two counts (a 26 U.S.C.A. § 4744 transfer tax violation and a 21 U.S.C.A. § 176a illegal importation count), given concurrent sentences of twenty-five years on each count and fined $10,000.

4. 21 U.S.C.A. § 176a was repealed by Title III, Section 1101(a) (2) of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 84 Stat. 1291, effective May 1, 1971. Section 1010 of the new Act is the successor to 21 U.S. C.A. § 176a, but without the statutory presumption.

Ed.2d 387. A catalogue of some of the other retroactivity holdings demonstrates the perplexities. For example, while the right to counsel at a preliminary hearing where the defendant makes incriminating statements is retroactively recognized,[5] the right to counsel during accusatorial police interrogation during which the accused makes incriminating statements is not retroactively enforced.[6] Similarly, while the defendant's right to a fair, impartial and unbiased jury is retroactively effected,[7] the right to an impartial judge may be given prospective application only.[8] Likewise, the defendant is entitled to retroactive protection against the extrajudicial confessions of a co-defendant,[9] but not of himself.[10]

Systematic exclusion of Blacks from juries calls for retroactive vindication,[11] but systematic exclusion of women apparently does not.[12] Newly announced standards for determining the voluntariness of confessions are retroactive,[13] but newly announced standards for determining the voluntariness of guilty pleas are not.[14]

■ At the outset we recognize the impossibility of reconciling these apparent inconsistencies with any neatly constructed, logically appealing, symmetrically patterned theory or doctrine. The reason is that retroactivity is essentially a pragmatic, case-by-case, result-oriented process whereby the often competing interests of society, the accused (or by now, the convicted) and the efficient administration of justice are balanced and weighed. There are no hard and fast rules, no shorthand formulae, in the retroactivity area—only factors, equities and considerations. Thus, what is dispositive of one case may be of little value in resolving any other retroactivity problem. The scales are sensitive with so much at stake, and the delicate balance shifts with each different set of facts and circumstances.

For example, in deciding its *Leary* retroactivity case,[15] the Ninth Circuit adopted a theory advanced by

5.  Arsenault v. Massachusetts, 1968, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5, retroactively applying White v. Maryland, 1963, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193. But see, Adams v. Illinois, *supra*.

6.  Johnson v. New Jersey, 1966, 384 U.S. 719, 89 S.Ct. 1772, 16 L.Ed.2d 882, denying retroactive application of Escobedo v. Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 and Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

7.  Witherspoon v. Illinois, 1968, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, carrying an announcement of retroactive application of its own holding, 391 U.S. at 523 n. 22, 88 S.Ct. 1770.

8.  DeStefano v. Woods, 1968, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308, denying retroactivity to Bloom v. Illinois, 1968, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522.

9.  Roberts v. Russell, 1968, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 retroactively applying Bruton v. United States, 1968, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.

10.  Johnson v. New Jersey, *supra*, denying retroactivity to Miranda v. Arizona, *supra*, and Escobedo v. Illinois, *supra*.

11.  Whitus v. Georgia, 1967, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599.

12.  Pendergraft v. Cook, 5 Cir., 1971, 446 F.2d 1222, denying retroactivity to White v. Crook, M.D.Ala. (three-Judge), 1966, 251 F.Supp. 401.

13.  Boles v. Stevenson, 1964, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109, retroactively applying Jackson v. Denno, 1963, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

14.  Halliday v. United States, 1969, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16, declining to apply McCarthy v. United States, 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 retroactively and Dominguez v. Henderson, 5 Cir., 1971, 447 F.2d 207, denying retroactive application of Boykin v. Alabama, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274.

15.  United States v. Scott, 9 Cir. (en banc), 1970, 425 F.2d 55.

many commentators [16] and cited by the Supreme Court [17] that "where the rule is fashioned to correct a serious flaw in the fact-finding process and therefore goes to the basic integrity and accuracy of the guilt-innocence determination, retroactive effect will be accorded." 425 F.2d at 58.

On the other hand, in other contexts retroactivity has been refused, despite the fact that purification of the fact-finding process is the sole purpose of the new constitutional principle. In Stovall v. Denno,[18] for example, the Supreme Court denied retroactive application of *Wade* [19] and *Gilbert*,[20] both designed solely to reduce the likelihood of misidentification of a defendant at a lineup. Recognizing that "the possibility of unfairness at that point is great," 388 U.S. at 298, 87 S.Ct. at 1970, 18 L.Ed.2d at 1204, and that *Wade* and *Gilbert* were both aimed at "avoiding unfairness at the trial by enhancing the *reliability of the fact-finding process* in the area of identification evidence," [21] the Supreme Court chose, nevertheless, to weigh such considerations against the "prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice." (Emphasis added). *Ibid.* Retroactive application of *Wade* and *Gilbert* was denied.

Similarly, the rule of Bloom v. Illinois, *supra*, extending the right to jury trial to serious criminal contempt proceedings, was predicated upon a desire to cleanse the fact-finding process. The Supreme Court recognized the obvious, that a guilt-determination by the "very judge who was the object of the allegedly contemptuous behavior" [22] is inherently suspect and vulnerable to being unfairly tried. Despite this premise that the old unconstitutional procedure produced a substantial likelihood of an infected result (since the fact-finder may well be biased or prejudiced, and is certainly not disinterested), *Bloom* has been held to apply prospectively only.[23]

The most important factor in the one line of cases—the fact that the new constitutional rule involved "an adjunct to the ascertainment of truth" [24]—was of relatively minor (at least, not controlling) significance in other circumstances.

Undeniably, such a flexible, imprecise, case-by-case approach has necessarily engendered some frustration and no small amount of confusion. Thus, the Second Circuit in its consideration of the retroactivity of Leary's 176a holding,[25] after making a preliminary survey of the cases and voluminous law review articles [26] on the subject of retroactivity, frankly proclaimed perhaps in despair or dismay that the subject matter was too confusing, that the doctrine is "still in a developing stage," and that it might be time to "take a new look" at the entire area. 438 F.2d at 669. Whereupon, the Court neatly side-stepped the retroactivity issue—or more accurately, deftly postponed it [27]—and disposed of the case

---

16. The commentaries are well catalogued in United States v. Liguori, 2 Cir., 1971, 438 F.2d 663, 669, n. 11.

17. Williams v. United States, 1971, 401 U.S. 646, 653, 91 S.Ct. 1148, 28 L. Ed.2d 388, 395; Adams v. Illinois, *supra*, 404 U.S. at 278, 92 S.Ct. 916.

18. Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

19. United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149.

20. Gilbert v. California, 1967, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

21. "The Wade and Gilbert rules are aimed at minimizing that possibility [misidentification] by preventing the unfairness at the pretrial confrontation that experience has proved can occur * * *." 388 U.S. at 298, 87 S.Ct. at 1970, 18 L.Ed.2d at 1204.

22. DeStefano v. Woods, 1968, 392 U.S. 631, 634, 88 S.Ct. 2093, 2096, 20 L.Ed. 2d 1308, 1312.

23. DeStefano v. Woods, *supra*.

24. Tehan v. United States ex rel. Shott, 1966, 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453, 460.

25. United States v. Liguori, *supra*.

26. See, United States v. Liguori, *supra*, 438 F.2d at 669 n. 11.

27. Actually, the Second Circuit may have been making more of a determination of

before it "by applying the simple and universal rule that a judgment in a criminal case in which the prosecution has offered and the record discloses no proof whatever of various elements of the crime charged has a fatal constitutional taint for lack of due process of law." *Id.* Since the Government had introduced "no evidence at all" to prove the essential element of knowledge of illegal importation, the conviction was overturned.

The difficulties and frustrations are well summed up in the dissent in *Scott, supra:*

"It is probably impossible to completely rationalize the decisions of the Supreme Court on the subject of retroactivity. A close reading of those decisions reveals an essentially ad hoc consideration of each newly articulated constitutional right. What standards have been set have proved transitory. Where the Court has treated itself bound by a standard, it has shown a willingness to bend, if not break, that

the retroactivity of *Leary* than the opinion professes because the premise—the notion that the presumption is "no evidence" of knowledge of illegal importation—derives directly from the *Leary* decision.

The inadequacy of this approach, of course, lies in the fact that it only postpones the inevitable. The holding was strictly limited to the special setting where there is absolutely "no evidence" of knowledge other than the presumption, and, emphatically, the Court expressed "no opinion with respect to other cases * * * where some evidence, however slight, has been received on the subject of the importation of marijuana or cocaine and knowledge thereof by the defendant." 438 F.2d at 670.

Where there is some evidence, probably circumstantial, of knowledge of illegal importation independent of the presumption, however, the possibility that it was the jury instruction on the presumption rather than the other evidence of knowledge that tipped the scales and precipitated the conviction, brings us right back to an initial determination on the retroactivity of *Leary*.

28. Mackey v. United States, 1971, 401 U.S. 667, 675, 91 S.Ct. 1160, 1171, 28 L.Ed.2d 404, 410.

standard in the interests of a desirable result."

425 F.2d at 68.

Indeed, as *Adams, supra,* so recently reminds us, Mr. Justice Harlan described developments in the retroactivity area as "haphazard," and suggested that the decisions have, for many, really produced more confusion than enlightenment. In his separate opinion in *Mackey,*[28] Mr. Justice Harlan lamented that, "The upshot of this confluence of viewpoints was that the subsequent course of *Linkletter*[29] became almost as difficult to follow as the tracks of a beast of prey in search of his intended victim." 401 U.S. at 676, 91 S.Ct. at 1172, 28 L.Ed.2d at 411.[30]

The point is that in retroactivity cases there is no one common denominator, no single answer, no lone master key opening all the doors. Each situation must be decided on its own set of facts and it is unsound to assume that simply because retroactivity has been afforded in

29. Mr. Justice Harlan was of course referring to Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601. Summarized in subsequent opinions, the *Linkletter* approach involves a trilogy of factors in a three fold analysis directed at discovering "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." Stovall v. Denno, 1967, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199, 1203; Desist v. United States, 1969, 394 U.S. 244, 249, 89 S.Ct. 1030, 22 L.Ed.2d 248, 255; Williams v. United States, 1971, 401 U.S. 646, 652 n. 5, 91 S.Ct. 1148, 28 L.Ed.2d 388, 394–95 n. 5; Adams v. Illinois, *supra.*

30. Cf. Mr. Justice Douglas' dissenting opinion in *Adams, supra:* "[T]he process [retroactivity] is too imprecise as a neutral guide for either this Court or the lower courts and will invariably permit retroactivity decisions to turn on predilections, not principles." 404 U.S. at 290, 92 S.Ct. at 923 [10 Cr.L.R. 3091].

one particular circumstance, it will be applied in any other. It is all a matter of individual balancing.

■ Balancing the factors in the 176a presumption case leads us to the conclusion—actually conceded in the Government's en banc brief and argument—that *Leary* should be retroactive in marijuana cases. Several types of cases support this evaluation.

The first of these involves a recent series of cases in which the Supreme Court has invalidated registration and taxation requirements imposed on gamblers, firearms dealers and marijuana traffickers.[31] The basis of these holdings has been that a person cannot be held criminally liable for failing to incriminate himself. Such conduct simply cannot constitutionally be made a crime. In a single sweep the Supreme Court gave across-the-board retroactive effect to all these cases in the recent decision of United States v. United States Coin and Currency.[32] The Supreme Court there stressed, "The conduct being penalized is constitutionally immune from punishment. No circumstances call more for the invocation of a rule of complete retroactivity."[33] See also, Harrington v. United States, 5 Cir., 1971, 444 F.2d 1190.

A second group of importance is typified by North Carolina v. Pearce,[34] ap-plying retroactivity the holding of Benton v. Maryland[35] that the Fifth Amendment guarantee against double jeopardy is enforceable against the states through the Fourteenth Amendment. Importantly, the underlying opinion, *Benton*, relied heavily upon the notion that it is constitutionally improper to punish a person twice for the same offense. The constitution absolutely prohibits multiple punishment for the same albeit criminal conduct.

The third type includes the line of cases extending retroactive effect to the decisions requiring appointment of counsel at various "critical stages" in the criminal proceedings.[36] The rationale of these cases is that without assistance of skilled counsel, "though he be not guilty, [defendant] faces the danger of conviction because he does not know how to establish his innocence,"[37] and that a system which does not provide counsel for indigent defendants is infected with a *"clear* danger of convicting the innocent." Tehan v. United States ex rel. Shott, 1966, 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed. 453, 460. (Emphasis added). Though the possibility of convicting some innocent persons regrettably inheres in any workable system of criminal justice, any procedure which seriously threatens to convict a substantial number of innocent persons must be abandoned and retroactively uprooted.

---

31. Marchetti v. United States, 1968, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889; Grosso v. United States, 1968, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906; Haynes v. United States, 1968, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923; Leary v. United States, *supra*, Part I. We include *Leary* in this list because, although *United States Coin & Currency* did not expressly pass upon the retroactivity of that case, it was relied on as the controlling precedent in this Court's decision granting retroactivity to *Leary I.* See, Harrington v. United States, 5 Cir., 1971, 444 F.2d 1190.

32. United States v. United States Coin and Currency, 1971, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434.

33. 401 U.S. at 724, 91 S.Ct. at 1046, 28 L.Ed.2d at 441.

34. North Carolina v. Pearce, 1969, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. Of course, the retroactivity of *Pearce's* newly announced procedure, whereby the sentencing judge must give reasons for an increased sentence after retrial, has not yet been decided. See Moon v. Maryland, 1970, 398 U.S. 319, 90 S.Ct. 1730, 26 L. Ed.2d 262.

35. Benton v. Maryland, 1969, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707.

36. Kitchens v. Smith, 1971, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519; Arsenault v. Massachusetts, 1968, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5; McConnell v. Rhay, 1968, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2. But see, Adams v. Illinois, *supra.*

37. Powell v. Alabama, 1932, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170.

We distill from this whole body of cases the Court's value judgment that people are not to be punished for the same offense twice, are not to be punished at all for actions which are constitutionally immune from punishment, and are not to be punished by procedures which present "a serious risk that the issue of guilt or innocence may not have been reliably determined," [38] or which produce a "clear danger of convicting the innocent." [39] Practices, procedures or statutes which present the probability of risk of such consequences must be eradicated and the surest way is to prescribe retroactivity.

Of course, as we have stressed before, this approach does not prescribe a standard for all cases. The solution is one of delicate adjustment evaluating factors against the competing policies at stake in situations which are seldom, if ever, alike or even equivalent.

Nevertheless, on this value judgment, result-oriented approach, the 176a marijuana presumption case presents an appropriate occasion for retroactive application. For given *Leary*, we can now see that the presumption has possibly resulted in a substantial number of persons being punished who may not in fact have violated the statute.

This conclusion follows as an extension of the Court's rationale in *Leary*. In what was as much an evaluation of non-record data as it was exposition of legal principle the Court reached the conclusion that it would be sheer speculation to assume that a majority of marijuana possessors were aware of the foreign origin of their marijuana:

"We conclude that the 'knowledge' aspect of the § 176a presumption cannot be upheld without making serious in-

cursions into the teachings of *Tot*, *Gainey*, and *Romano*. In the context of this part of the statute, those teachings require that it be determined with substantial assurance that at least a majority of marihuana possessors have learned of the foreign origin of their marihuana through one or more of the ways discussed above.

We find it impossible to make such a determination. As we have seen, the materials at our disposal leave us at large to estimate even roughly the proportion of marihuana possessors who have learned in one way or another the origin of their marihuana. It must also be recognized that a not inconsiderable proportion of domestically consumed marihuana appears to have been grown in this country, and that its possessors must be taken to have "known," if anything, that their marihuana was *not* illegally imported. In short, it would be no more than speculation were we to say that even as much as a majority of possessors 'knew' the source of their marihuana."

395 U.S. at 52–53, 89 S.Ct. at 1556, 23 L.Ed.2d at 91.

Thus, the possibility that many convicted marijuana possessors did not in fact know the origin of their marijuana is distinct, if not likely. Stated alternatively, there is an inherent danger that the fact-finding process may have miscarried—to the extent of resulting in convictions of people who may have been guiltless of the particular Federal offense with which they were charged.

Although on the surface an argument can be constructed that on the analogy of non-retroactivity in Fourth Amendment search and seizure cases,[40] the use

38. Roberts v. Russell, 1968, 392 U.S. 293, 295, 88 S.Ct. 1921, 1922, 20 L.Ed.2d 1100, 1103.

39. Tehan v. Shott, *supra*, 382 U.S. at 416, 86 S.Ct. at 465, 15 L.Ed.2d at 460.

40. Desist v. United States, 1969, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248; Linkletter v. Walker, *supra*; Williams v.

United States, *supra*. In search and seizure cases the purpose of an exclusionary rule is to deter unlawful police conduct. There is practically no possibility that innocent persons have been convicted primarily as a result of the operation of the old procedure. To the contrary, the fact-finding process is probably enhanced by the old rule, the new rule be-

of an invalid presumption ought not to affect the guilt determining process any more so than the use of illegally seized evidence, we think there is a real distinction.

Under the Act the defendant must have knowledge that the marijuana was illegally imported, and the presumption supplies this factual element of the offense. It does this without regard to the actual facts—either as to the particular accused or to all possessors. This is something a good deal more serious than the receipt of evidence later held to be illegal. For here it is not even a question of evidence. The presumption eliminates the need for evidence. Since the "presumed" fact in 176a marijuana cases (knowledge of illegal importation) is constitutionally valueless as evidence, the enigma wrapped in a mystery of the guilty verdict presents a situation in which there may be [41] a substantial likelihood that it was the presumption and no other probative evidence on the element (knowledge) which brought about the verdict of guilt. In other words, using the presumption makes it very possible that persons actually innocent of the Federal offense may have been convicted because the presumption alone provided the crucial element of the offense, an element which, if missing, would have made the prosecution's case collapse. In this way the presumption holding in *Leary* "correct[s] serious flaws in the fact-finding process at trial," [42] Stovall v. Denno, *supra,* 388 U.S. at 298, 87 S.Ct. at 1970, 18 L.Ed.2d at 1204, since it requires that the Government present evidence where none had been required before.

Accordingly, retroactive application of the *Leary* 176a marijuana presumption ruling becomes appropriate.[43]

### Error Harmless Or Harmful?

A determination that *Leary* is to be recognized retroactively leads automatically to the obvious observation that whenever the 176a presumption instruction has been given, error has occurred. That pronouncement, however, does not dispose of the entire case, for error, like wine, can have various effects. It can be harmless or "plain" or most likely, something in between.[44] Our task is to analyze the error inherent in a 176a presumption charge and characterize its effect. Although both this Court [45] and

---

ing motivated by considerations other than the purity of the truth determination process. Across the board these exclusionary cases have been denied retroactive effect.

41. See discussion of harmless error rule, text, *infra.*

42. The Ninth Circuit so held under § 176a:
"The invalidated portion of the presumption was an integral part of the fact-finding process. The use of the presumption affected the integrity of the determination of guilt, and its use was neither secondary in importance nor infrequent in occurrence. The Government's use of the presumption permitted it to bypass proof of substantive elements of the offense, thus creating a "serious risk that the issue of guilt or innocence may not have been reliably determined." (Roberts v. Russell, *supra,* 392 U.S. at 295, 88 S.Ct. at 1922.) The intimacy of the connection between the use of the presumption and the

finding of guilt is dramatically evident in a case in which the Government relied upon the presumption alone to prove knowledge of illegal importation. But the presumption is no less inextricably bound to the finding of guilt when it is added to independent evidence of knowledge and the jury is permitted to decide guilt either upon the presumption, or upon the independent evidence, or both."
United States v. Scott, *supra,* 425 F.2d at 59.

43. United States v. Scardino, 5 Cir., 1969, 414 F.2d 925, has been previously discarded in *Harrington, supra.*

44. See, Helms v. United States, 5 Cir., 1964, 340 F.2d 15, 19.

45. United States v. Trabucco, 5 Cir., 1970, 424 F.2d 1311, cert. denied, 399 U.S. 918, 90 S.Ct. 2224, 26 L.Ed.2d 785; Good v. United States, 5 Cir., 1969, 410 F.2d 1217; Walker v. United States, 5 Cir., 1970, 433 F.2d 306; Ugarte-Veizaga v. United States, 5 Cir., 1972, 452 F.2d 1195.

the Ninth Circuit [46] have applied harmless error concepts to 176a presumption cases, we think it deserves some discussion.

Initially, we are confronted with a threshold question of whether the giving of a charge incorporating an unconstitutional presumption can ever be characterized as harmless. Once again the law is something less than clear.

■■ That a harmless error rule may apply even where the error is of constitutional dimensions cannot be seriously disputed. Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Harrington v. California, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. Irrefutably, "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." Chapman v. California, supra, 386 U.S. at 22, 87 S. Ct. at 827, 17 L.Ed.2d at 709.

■ On the other hand, "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." Id. at 23, 87 S.Ct. at 827.[47] Interestingly, these "harmful per se" errors are the most likely candidates for retroactive application of the corrective pronouncements.

In his special concurrence to Chapman v. California, supra, Mr. Justice Stewart indicated that an error involving an unconstitutional presumption would fit into this latter category. "When a jury is instructed in an unconstitutional presumption, the conviction must be overturned, *though there was ample evidence apart from the presumption to sustain the verdict*." (Emphasis added). 386 U.S. at 44, 87 S.Ct. at 838, 17 L.Ed.2d at 721–722.

The case relied upon by Mr. Justice Stewart in making that observation is Bollenbach v. United States, 1946, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350. In *Bollenbach*, the defendant was indicted for conspiring to transport stolen securities from Minnesota to New York. The evidence established that the securities were stolen in Minnesota and that they had turned up in defendant's possession in New York a short time later. Additionally, defendant admitted that he knew the securities had come from "out West." The trial judge instructed the jury that the unexplained possession of stolen goods in another state shortly after the theft raised a presumption that the possessor knew that they had been transported in interstate commerce. The Court of Appeals had held that the instruction was erroneous under Tot v. United States,[48] but harmless in view of the defendant's admission of knowledge

46. United States v. Scott, *supra*; United States v. Simon, 9 Cir., 1970, 424 F.2d 1049; cert. denied, 400 U.S. 827, 91 S.Ct. 52, 27 L.Ed.2d 56; United States v. Pyle, 9 Cir., 1970, 424 F.2d 1013; Plascencia-Plascencia v. United States, 9 Cir., 1970, 423 F.2d 803, cert. denied, 400 U.S. 868, 91 S.Ct. 111, 27 L.Ed.2d 107; United States v. Mahoney, 9 Cir., 1970, 427 F.2d 658, cert. denied sub nom. Garcia v. United States, 400 U.S. 849, 91 S.Ct. 49, 27 L.Ed.2d 87; Zaragoza-Almeida v. United States, 9 Cir., 1970, 427 F.2d 1148; Petley v. United States, 9 Cir., 1970, 427 F.2d 1101, cert. denied, 400 U.S. 827, 90 S.Ct. 55, 27 L.Ed.2d 57; Feldstein v. United States, 9 Cir., 1970, 429 F.2d 1092, cert. denied, 400 U.S. 920, 91 S.Ct. 174, 27 L.Ed.2d 159; United States v. May, 9 Cir., 1970, 431 F.2d 678; United States v. Teran, 9 Cir., 1970, 434 F.2d 605.

47. As examples, the Supreme Court cites Payne v. Arkansas, 1958, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (coerced confession); Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (right to counsel); and Tumey v. Ohio, 1927, 273 U.S. 510, 47 S.Ct. 437, 71 L. Ed. 749 (impartial judge). 386 U.S. at 23 n. 8, 87 S.Ct. 824, 17 L.Ed.2d at 710 n. 8. See also, Concurring Opinion of Mr. Justice Stewart, 386 U.S. at 42–45, 87 S.Ct. at 824, 17 L.Ed.2d at 720–722.

48. Tot v. United States, 1943, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519.

that the securities had come from "out West." The Supreme Court reversed.

Mr. Justice Frankfurter, writing for the Court, rejected the Government's plea of harmless error, stating that, "To [hold] so would transfer to the jury the judge's function in giving the law and transfer to the appellate court the jury's function of measuring the evidence by appropriate legal yardsticks. * * * The question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials in federal courts." 326 U.S. at 614, 66 S.Ct. at 405.[49]

The only time a harmless error rule would be appropriate, according to Mr. Justice Frankfurter, would be when the error involved merely a "deviation from formal correctness." *Id.* at 615, 66 S.Ct. 402. Concluding, he asserts that it is improper to presume such errors to be harmless merely because "the appellate court is left without doubt that [defendant] is, after all, guilty. In view of the place of importance that trial by jury has in our Bill of Rights, it is not to be supposed that Congress intended to substitute the belief of appellate judges in the guilt of an accused, *however justifiably engendered by the dead record*, for ascertainment of guilt by a jury under appropriate judicial guidance, however

cumbersome that process may be." *Id.* (Emphasis added).

But the *Bollenbach* dicta does not rule out harmless error in all presumption instruction cases. First, its effect has certainly been ameliorated by more recent Supreme Court decisions expanding the scope of the "harmless constitutional error" rule. See, Chapman v. California, *supra*; Harrington v. United States, *supra*. In this regard, the Supreme Court has recently indicated a willingness to adopt a harmless error rule in presumptive instruction cases. See, Turner v. United States, 1970, 396 U.S. 398, 421, 90 S.Ct. 642, 24 L.Ed.2d 610, 626.[50] Second, were its full implications given effect it is apparent that no error in instructing the jury—not even some inconsequential "juridical slip of the tongue"[51]—could ever be deemed harmless. Such is not and really never has been the case, as is demonstrated by the numerous cases in which convictions have been upheld despite erroneous instructions when it could be confidently declared that the erroneous instruction did not contribute to the verdict of guilt.[52]

Finally, with *Chapman, supra*, as a starting point, a justified concern for the already over-taxed institutions administering criminal justice demands a recognition that concepts useful in the 1940's may warrant reconsideration in the Seventies. To demonstrate, our case

---

49. Accord, United States v. Casale Car Leasing, Inc., 2 Cir., 1967, 385 F.2d 707.

50. "So, too, the instruction on the presumption is beside the point, since even if invalid, it was harmless error; the jury must have believed the possession evidence which in itself established a distribution barred by the statute." 396 U.S. at 421, 90 S.Ct. at 654, 24 L.Ed.2d at 626.

51. See, Thrash v. O'Donnell, 5 Cir., 1971, 448 F.2d 886, 890.

52. See, e. g., Starr v. United States, 1959, 105 U.S.App.D.C. 91, 264 F.2d 377, cert. denied, 359 U.S. 936, 79 S.Ct. 652, 3 L.Ed.2d 639; Wheeler v. United States, 1948, 82 U.S.App.D.C. 363, 165 F.2d 225, cert. denied, 333 U.S. 829, 68 S.Ct.

448, 92 L.Ed. 1115; Green v. United States, 9 Cir., 1960, 282 F.2d 388, cert. denied, 1961, 365 U.S. 804, 81 S.Ct. 469, 5 L.Ed.2d 460; Lewis v. United States, 5 Cir., 1967, 375 F.2d 772; United States v. Amadio, 7 Cir., 1954, 215 F.2d 605, rev'd on other grounds, Amadio v. United States, 348 U.S. 892, 75 S.Ct. 218, 99 L.Ed. 701; Bartlett v. United States, 10 Cir., 1948, 166 F.2d 920; United States v. Rooth, 2 Cir., 1947, 159 F.2d 659; Helms v. United States, 5 Cir., 1964, 340 F.2d 15; Estes v. United States, 5 Cir., 1964, 335 F.2d 609; Vasquez v. United States, 9 Cir., 1961, 290 F.2d 897; Bradford v. United States, 9 Cir., 1959, 271 F.2d 58; United States v. Owens, 2 Cir., 1959, 263 F.2d 720. See cases cited in Henderson v. United States, 5 Cir., 1970, 425 F.2d 134, 144 n. 15.

of Walker v. United States [53] is illustrative. In *Walker,* the defendant took the stand at trial, admitted purchasing his marijuana in Mexico and importing it into the United States, and declared that his intent in crossing the bridge with the marijuana was to test the federal laws against its importation. The jury charge included an instruction on the 176a presumption. We declined to hold that error harmful in view of the facts of that case. To declare in a doctrinaire fashion that such instructions could not ever be harmless would be to ignore experience-proved realities, sacrificing logic for the sake of form at the expense of justice.

■ This argument seems particularly potent where the case on review relies on a retroactive application of a newly announced constitutional principle. The Supreme Court has consistently expressed concern, in considering retroactivity cases,[54] about the effect on the administration of justice and the integrity of the judicial process. Though this factor itself cannot be said to have been determinative in any given case,[55] adoption of a harmless error rule seems particularly appropriate in retroactivity cases, as a means of minimizing the administrative burden and disruption inevitably resulting from retroactivity decisions.

We therefore conclude, as did the Ninth Circuit, that there is a place for a harmless error rule in 176a presumption cases involving retroactive application of *Leary.*

### But When Is The Error Harmless?

In fashioning a harmless error rule for these cases, however, we are again faced with a difficult task of reconciling and synthesizing various decisions. The starting point, of course, is the *Leary* case itself. In *Leary,* it will be remem-

bered, the defendant was apprehended at a customs inspection station just across the International Bridge at Laredo, Texas, where three partially smoked marijuana cigarettes were taken from his possession. More importantly, at trial Leary took the stand and admitted that he had driven across the bridge knowing he had marijuana in his possession, though he claimed that the marijuana had originally come from New York. The Supreme Court conceded that under a South-North theory, "a conviction could have been based solely upon petitioner's own testimony that the marijuana had been brought back from Mexico into the United States and that with knowledge of that fact petitioner had continued to transport it." As a matter of fact, the Court went so far as to assume that this constituted "all the evidence required for a valid conviction under the South-North theory," but refused to find the 176a presumption, which supported only a North-South theory conviction, to be harmless.

■ It is therefore evident in light of this action in *Leary* that to affirm a conviction despite a 176a presumption instruction, the reviewing court must find something more than merely a strong case indicating guilt. Indeed, the recent Supreme Court decisions regarding "harmless constitutional error" specifically reject the "overwhelming evidence of guilt" approach and stress instead that the relevant inquiry is "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Chapman v. California, *supra,* 356 U.S. at 23, 87 S.Ct. at 827, citing Fahy v. Connecticut, 1963, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171, 173. Only if the Court can declare with confidence "beyond a reasonable doubt," *Chapman, supra,* 386 U.S. at 24, 87 S.Ct. 824, that

---

53. Walker v. United States, 5 Cir., 1970, 433 F.2d 306.

54. See Text, *supra.*

55. For example, it is difficult to imagine rulings that would have a more taxing, if not devastating, effect on the administra-

tion of justice than Gideon v. Wainwright, *supra,* and progeny, requiring representation of counsel. Nevertheless, with the exception of *Escobedo, Wade, Gilbert* and *Coleman,* these have all been given retroactive effect. See note 36, *supra.*

such a possibility is excluded by the record can it pronounce a constitutional error to be harmless.

■ Applying that standard to the 176a cases, certain guidelines become apparent. Initially, and perhaps most importantly, the instructions as a whole must not have affirmatively removed the issue of knowledge of illegal importation altogether from the jury's consideration. Knowledge of importation is an essential element of the offense and therefore must have been considered by the jury. As Judge Tuttle explained over a decade ago, "Undoubtedly a charge which expressly, and with emphasis dictated that the jury might find the accused guilty without finding that he had committed one of the essential acts would be prejudicial error requiring a reversal of conviction." Brown v. United States, 5 Cir., 1960, 277 F.2d 573, 576.[56]

■ Additionally, the burden is on the government to demonstrate that the error was harmless "beyond a reasonable doubt." Credibility choices are to be resolved in favor of the accused. A failure to come forward with evidence must weigh against the government.

■ It is not enough that there is some evidence other than the presumption tending to show knowledge. This is not the kind of situation where the facts must be viewed in the light most favorable to the government, since to do so would shift the *initial* burden of proof to the defendant ex post facto. The inquiry is not, as suggested by the government, whether the defendant was "substantially prejudiced" by the instruction, but rather whether the government has established, beyond a reasonable doubt, that there is no reasonable possibility that the instruction might have contributed to the guilty verdict.

■ The Supreme Court has suggested five ways in which an individual might become aware that *his* marijuana was illegally imported. *Leary, supra,* 395 U.S. at 47–52, 89 S.Ct. 1532, 23 L.Ed.2d at 88–91.[57] The government has to have

---

56. In United States v. Scott, *supra,* the Ninth Circuit seems to have followed a similarly stringent rule. An undercover agent testified that Scott told him his source of supply was in Mexico, though Scott denied this conversation. An expert witness testified that the packaging, size and unmanicured condition of the marijuana all indicated that the marijuana came from Mexico. The quantity of marijuana seized involved several kilos. Nevertheless, the Ninth Circuit, correctly in our opinion, concentrated on the *possible* effect of the presumption on the jury in the light of all of the evidence in concluding that the error was not harmless beyond a reasonable doubt.

For another example of an application of that standard in another context (stolen securities), see Booth v. United States, 9 Cir., 1946, 154 F.2d 73, 75–76:

"As in the Bollenbach case, this evidence is sufficient to sustain the conviction in the absence of the erroneous instruction. However, the jury well could have inferred that Mooney was not a trustworthy person because he was a participant in the fraudulent attempt to squeeze a reward out of Mr. Lucas, in which he was to participate, and that he was not indicted so he could give evidence for the government, and hence

that they did not believe him. In that event the jury well may have relied upon the erroneous instruction that they could infer the securities had been or were in interstate commerce because they could infer that the possessors of stolen goods are those who stole them, and hence concluded a conspiracy between Booth and the other possessor.

Since the verdict may have rested upon the erroneous instruction, the judgment of conviction sentencing appellant is reversed."

57. "We can imagine five ways in which a possessor might acquire such knowledge: (1) he might be aware of the proportion of domestically consumed marijuana which is smuggled from abroad and deduce that his was illegally imported; (2) he might have smuggled the marijuana himself; (3) he might have learned by indirect means that the marijuana consumed in his locality or furnished by his supplier was smuggled from abroad; (4) he might have specified foreign marihuana when making his "buy," or might have been told the source of the marihuana by his supplier; (5) he might be able to tell the source from the appearance, packaging, or taste of the marihuana itself."

presented substantial uncontroverted evidence that the defendant acquired the requisite knowledge in one of these or some other likely way to permit the trial or reviewing court to declare beyond a reasonable doubt that it is not reasonably possible that the presumption contributed to the guilty verdict.

### At Last—Back To Vaccaro

What we have decided, then, is that *Leary* is to be retroactively applied, subject to a harmless error rule, established beyond a reasonable doubt.

At long last, then, we examine the facts of this case in an application of the principles we set forth.

Since a complete statement of the case is already published in our earlier opinion on Vaccaro's direct appeal, United States v. Vaccaro, *supra,* no useful purpose would be served by repeating it here. The facts are, however, important and our capsulated summary does not eliminate consideration of the details there reported since harmless-error-beyond-reasonable-doubt is a case-by-case factual determination. But in a shorthand way it is sufficient here to observe that there is not one shred of evidence—other than the presumption—tending to show that the defendant knew that the marijuana gleanings found in his vehicle were illegally imported into this country. There is not even a suggestion that defendant smuggled the marijuana into this country himself (in fact, the Government's theory is that it was smuggled in by some unidentified Mexican). The gleanings were of very slight quanti-ty and were not distinctively packaged (in fact, they were not packaged at all), so knowledge of illegal importation could not have come from that source. Defendant made no statement indicating incriminating knowledge. All the jury had, other than the presumption, from which it could infer that defendant had the requisite knowledge was the fact that he was apprehended in a border town, after a high speed chase through South Texas, with marijuana gleanings in the trunk of his car. Equally important, the Trial Court's instructions mentioning the general knowledge element only once, repeated and emphasized the presumption no less than four times.[58] He underscored the importance of the presumption —"And then this very important paragraph * * * [here reading the 176a presumption from the statute]." He went on, "if you are convinced beyond a reasonable doubt that sixty grains were in the defendant's possession, that is sufficient to warrant conviction." And again, "In the event you find that the defendant had in his possession some substantial part of the sixty grains alleged, it would be sufficient to warrant your finding of guilty." And again—"Those are the two statutes which are involved; and you will notice that both of them make provision as to the possession by a defendant, 176(a), the one I read first, providing that where the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury * * *." [59]

---

395 U.S. at 47, 89 S.Ct. at 1554, 23 L. Ed.2d at 88.

In its excursion into empirical data the Court did not here undertake to catalogue all the avenues to knowledge.

58. Additionally, instructions relating to the 26 U.S.C.A. § 4744 count emphasized the fact of possession as the determinator of guilt.

59. Although the charge came dangerously close to making the presumption irrefutable and conclusive, a practice which was condemned even before *Leary,* (see, United States v. Peeples, 2 Cir., 1967, 377 F.2d 205), we do not criticize the Judge's charge. His instructions were consistent with the law as it was then understood and the precise language used had been, and was to be, specifically approved by several Courts of Appeals, at least. See, Caudillo v. United States, 9 Cir., 1958, 253 F.2d 513; Leary v. United States, 5 Cir., 1967, 383 F.2d 851, 868–70; Costello v. United States, 9 Cir., 1963, 324 F.2d 260, 263–264; United States v. Soto, 7 Cir., 1958, 256 F.2d 729, 735; Borne

Manifestly, on this record neither we nor the Trial Court can declare, with assurance beyond a reasonable doubt, that the jury was not influenced by the presumption in reaching its verdict of guilt. In this case there is even more than a "reasonable possibility that the evidence [presumption] complained of might have contributed to the conviction." It seems practically certain that it did. Clearly the erroneous instruction was not harmless beyond a reasonable doubt.

None of the foregoing is intended to preclude the government from retrying the defendant if they choose and proving by permissible means knowledge of illegal importation beyond a reasonable doubt, as every other element of the criminal offense,[60] but without the use of the unconstitutional presumption.

Reversed and remanded.

GEWIN, Circuit Judge (concurring specially):

It is clear to me that Judge Brown has reached the correct conclusion in his scholarly opinion in this case. Therefore, I concur in the result. However, in my judgment it discusses legal questions not necessary to a decision in the case before us. Valid assertions for a particular point of view are set forth forcefully in support of the legal concepts discussed, but I am not prepared to concur in all that is said.

As Judge Brown plainly states, if the unlawful presumption is eliminated, as the *Leary* decision mandates, there is no evidence whatever of one of the essential elements of the crime charged—knowledge of illegal importation. The appellant urges retroactive application of the *Leary* decision and after substantial consideration the government agrees in its final brief and on oral argument that the decision should be so applied. I

think both the appellant and the government are correct. Absent some cogent and compelling reason not to apply the *Leary* decision retroactively, there is nothing else to decide.

v. United States, 5 Cir., 1964, 332 F.2d 565, 566; United States v. Gibson, 2 Cir., 1962, 310 F.2d 79, 82. But see, United States v. Adams, D.C.N.Y., 1968, 293 F. Supp. 776—the only lower court decision to correctly forecast the *Leary* result.

60. Vaccaro's conviction for violating 26 U.S.C.A. § 4744 is, of course, due for reversal by virtue of the principles announced in Harrington v. United States, *supra.*