81,589-05

Cause No. 1357233

In Re. Vincent E. Beasley          §          In the District Court of
        Relator, Pro-Se
                                   §

VS.                                §          Harris County, Texas

This document contains some
pages that are of poor quality
at the time of imaging.

                                   §

Honorable, Jean Hughes             §          the 228th Judicial District

Devon Anderson, Dist. Attorney,    §
        Respondent.

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 19 2015

Abel Acosta, Clerk

APPLICATION FOR WRIT OF MANDAMUS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Vincent E. Beasley, TDCJ-ID #1867323, Relator, pro se in the above Styled and Numbered Cause of action and files this Original Application for Writ of Mandamus, pursuant to the Texas Constitution Art. 1. §10 and Tex. Const. Art. 1 §14, written in the U.S.C.A Const. Amend IV. V Mandated and Recognized In the First Court of Appeals (Hou. 1st Dist) further set In the United States Court of Appeals for the Fifth Circuit would show this Honorable Court of the following:-

I.

Vincent E. Beasley, TDCJ-ID #1867323, is an offender incarcerated in the Texas Department of Criminal Justice and is appearing pro se who can be located at the James A. Lynaugh Unit, 1098, South Hwy 2037, Pecos County, Fort Stockton, Tx 79735. Relator has exhausted his remedies and has no other remedy at law. The act sought to be compelled is ministerial. Not discretionary in nature and requires Respondent to immediately Grant relief to Relator in his immediate release from William Stephens custody. He being the director of the

Application for Writ of Mandamus                          Page I

Texas Department of Criminal Justice. Whereas Constitutional violation raises jurisdiction question, Relator shows by clear and convincing law set in both the Texas and United States'Supreme Court precedence at law.

## PREAMBLE

**Evans v. Michigan**, 133 S.ct. 1069, 185 L.Ed 2d 124 (2013) citing: "Where retrial following a court. Decreed Acquittal was barred under Double Jeopardy Clause of the U.S. Constitution, even in cases where a Court misconstruced the statue under which a defendant was charged. And the Courts order acquitting Petitioner. Although based on an error of law, prevented the State from re-trial of the case. In contrast to procedural rulings which resulted in orders dismissing a case Granting a mistrial on a basis that was unrelated to factual guilt or innocence acquittals were substantive rulings that was concluded criminal proceedings and raised significant Double Jeopard concerns". Basically, since the Petitioner in the instant case has already been acquitted of the joindered offense of Burglary with the Intent to commit another felony Sexual Assault. The Substantive decision has already been made of acquittal by this court of Appeals See **Beasley v. State**, 426 S.W. 3d 140 (2012). Further "over the last half century since the United States Supreme Court first recognized that the Double Jeopardy Clause bars re-trial following a Court decreed acquittal. Even if the acquittal is based upon an egregiously erroneous foundation. A mistaken acquittal cannot be reviewed on error or otherwise without putting a defendant twice in Jeopardy, and thereby violating the U.S. Constitution".

Therefore, this Court should recognize its rulings Mandated by Supreme Court and Constitutional Precedence.

Application for Writ of Mandamus

Cause No. 1357233

In Re. Vincent E. Beasley          §          Relator

                                   §

V.                                 §

                                   §

Honorable Jean Hughes, Judge       §          Respondent
Devon Anderson, District Atty.     §


### CERTIFICATE OF INTERESTED PERSONS


The undersigned Counsel of Record certifies that the following listed persons have an Interest in the outcome of this case these representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.


1. Honorable Jean Hughes                    Harris County, District Judge

2. Vincent E. Beasley                       Relator

3. Devon Anderson                           Counsel for Respondent
   District Attorney
   1201 Franklin, Suite 600
   Houston, Texas 77002-1923

## TABLE OF CONTENTS

Contents                                                                       Page

Certificate of Interested Persons........................... 1

Table of Contents.......................................... 2

Index of Authorities....................................... 3

Statement of Case.......................................... 4

Statement of Jurisdiction.................................. 5

Statement of the Issues.................................... 6

Statement of the Facts..................................... 7

Arguments.................................................. 8, 9, 10

Prayer..................................................... 10

Verification............................................... 11

Certificate of Service..................................... 12

## INDEX OF AUTHORITIES

Cases                                                                    Page

Anderson v. State, 24.Cr. R 705. 7 S.W 40 (1886)............... 7

Ashe v. Swenson, 397 U.S. 436, 453-54, 25 L.Ed 90 S.ct........ 11
                              1189 (1970)

Beasley v. State, 426 S.W. 3d 140 (2012)...................... II, 7

Blackledge v. Perry, 417 U.S. 2194 S.ct. 2098, 40 L.Ed 2d..... 7
                              628 (1974)

French v. Estelle, 692 F.2d 1021 (5th Cir. 1982).............. 10

Johnson v. Estelle, 506 F.2d 347 (5th Cir. 1975).............. 7,8,9,10

Lowery v. Estelle, 696 F.2d 333 (5th Cir. 1983)............... 8

Martin Linen U.S. v. Martin Linen Co., 430 U.S. 564, 97....... 8
                              S.ct. 1349

McDonald v. Wainwright, 493 F.2d 204 (5th Cir. 1974).......... 9

Menna v. New York, 425 U.S. 61, 63 at 96 S.ct. 241 L.Ed (1975) 8, 10

United States v. Saltzman, 537 F.3d 353, 359 (5th Cir. 2008).. 7

United States v. Scott, 437 U.S. 82, 98 S.ct. 2187 L.Ed (1970) 8

Evans v. Michigan, 133 S.ct. 1069, 185 L.Ed. 2d 124 (2013).... II


Constitutions Statutes and Rules:

U.S. Const. Amend V.......................................... I

U.S. Const. Amend 14......................................... I

Tex. Const. Art. 1 §10....................................... 4

Tex. Const. Art. 1 §14....................................... 5,6,7,8,11

Tex. Const. Art. 1 §13....................................... 5,6,8

Tex. Code. Crim. Proc. Ann. Art. 11.42....................... 6

Tex. Code. Crim. Proc. Ann. Art. 11.45....................... 6

Tex. Code. Crim. Proc. Ann. Art. 1.15........................ 10

## STATEMENT OF THE CASE

Relator challenged the Director's custody of him currently pursuant Judgment and sentence in the 15th District Court for the 228th District Court of Harris County, Texas, Case No. 135723301010 (The Instant Case) for the offense of Sexual Assault which has been reindicted from the primary case of Burglary with the Intent to commit another felony Sexual Assault Cause No. 1204247, following a trial where the jury given the wrongful instruction as to lesser included offense found the Relator guilty of the not lessor-included offense of Sexual Assault, violation of Tex. Const. Art. 1 §10, which on Direct Appeal. The First Court of Appeals (Hou Dist) Reversed and Remanded to the proper lessor included offense of Criminal Trespass. The Court of Appeals Honorable Judge Jane Bland held that: The Jury effectively acquitted defendant of Burglary with the intent to commit Sexual Assault. By the finding of any lessor charge. The State moved to dismiss the Criminal Trespass and reindicted the Relator in the instant case. To which he plead guilty on June 17, 2013, on the same Relator filed Motion to Withdraw plea and was denied twice. Being sentenced to Eight (8) years confinement in violation of clearly establish Constitutional Law.

## STATEMENT OF JURISDICTION

Jurisdiction of this Court of Appeals is invoked under the Rules of Appellate Procedure 57.2.3. Texas Code of Criminal Procedure, as a Writ of Mandamus from the denial of Writ of Habeas Corpus pursuant Art. 11.07, and Vincent E. Beasley seeks Writ of Mandamus, that Respondents follow Mandate set in the Texas Constitution Art. 1 §13, 14, which provides this Court with subject matter Jurisdiction.

## STATEMENT OF THE ISSUES

(1) Relator asserts the State has no Jurisdiction under the Double Jeopardy Clause in the Texas Constitution Art. 1§ 13, 14.

(2) State has failed to follow the Mandate of the Court of Appeals (1st Dist. Hou)

(3) Supreme Court has decided that a guilty plea doesn't forclose a claim of Jurisdiction question in Double Jeopardy.

(4) No Evidence of (DNA) is actual innocence where (DNA) evidence where not presented in the first trial.

(5) The State having no Jurisdiction the sentence is void. Judgment is void pursuant to Tex. Code. Crim. Proc. Ann. Art. 11.42 and 11.45.

## STATEMENT OF FACTS

Relator was charged with Burglary with the Intent to commit another felony Sexual Assault on or about Feb 9, 2009, then going to trial Feb 11, 2011, was wrongfully convicted of a not lessor-included offense of Sexual Assault, which in a successful Appeal The Court of Appeals Reversed the verdict of the lower Court more importantly prosecutors continued to vindictively prosecute to a greater charge than the Mandate. **Blackledge v. Perry**, 417 U.S. 21 28-29 (1974) also **U.S. v. Saltzman**, 537 F.3d 353, 359 (5th Cir. 2008) In which violates Collateral Estoppels Double Jeopardy. In the precedence set in **Ashe v. Swenson**, 397 U.S. 436 (1970) where there is a established acquittal the State is Estopped from second action. Const. Amend. Tex. Art. 1 §14 Cited: V.T.C.A. Tex. Const. Art 1§14

> "The guarunty in this section of the Texas Constitution is Broader in scope, for not only can a person not be put on trial a second time for an offense of which he has once been placed in Jeopardy, hence discharge for valid causes without a verdict while former conviction and acquittal are based upon verdicts rendered. **Anderson v. State**, 24 CR. R 705,7 S.W.40 (1886)"

The Court of Appeals (1st Dist. Hou) Cause No. 01-11-00143 on July 26, 2012, **Beasley v. State**, 426 S.W. 3d 140 (2012) recognized the acquittal Tex. Code. Crim. Proc. Art 1.11 Acquittal of higher offense as Jeopardy"

Under **Johnson v. Estelle**, 506 F.2d 347 (5th Cir. 1975). The issues that would be presented in second proceeding would substantially duplicate those presented in the first proceedings.

## ARGUMENT

Relator's guilty plea meets the Menna exception. See **Menna v. New York,** 425 U.S. 61, 63 at 96 S.ct. 241, 242 L.Ed (1975). The Double Jeopardy Clause however prohibits the government from convicting the Defendant regardless of the factual guilt, because the State lacks Jurisdiction from haling a defendant into Court to face charges as also recognizes in the Texas Constitution Art 1§14. Whereas the acquittal of the Relators Burglary with the Intent to commit Sexual Assault prohibited the State's second action. The V.T.C.A. Tex. Const. Art 1§ 13, 14 made the acknowledgement of the Federal precedence of **Johnson v. Estelle,** 506 F.2d 347 (5th Cir. 1975) "Where a determination of innocence on one of two issues was the cause of an acquittal and a determination of guilt on both issues is necessary for a subsequent conviction. The State is stopped from bringing the action". The Court of Appeals has affirmed that acquittal. Further, **Lowery v. Estelle,** 696 F.2d 333 (5th Cir. 1983). "The Supreme Court has defined acquittal as the ruling Judge whatever is lable, which actually represents a resolution in the defendant's favor, correct or not, of some or all of the factual elements of the offense charged **Martin Linen United States v. Martin Linen Supply Co.,** 430 U.S. 564, 97 S.ct. 1389, 51 L.Ed 2d 642, 430 U.S. at 571, 97 S.ct. at 1355", **United States v. Scott,** 437 U.S. 82, 98 S.ct. 2187, 2197, 57 L.Ed 2d 65 (1978). **Green and Price v. Georgia,** 398 U.S. 323, 90 S.ct. 1757, 26 L.Ed 300 (1970) recognized the partial acquittal implicit in a jurys return of a guilt verdict on a lessor included offense following the trial on the greater charge. In which the Relator has not been tried on the lessor included offense charge as Mandate because Sexual Assault is not a lessor included offense of Burglary with the intent to commit another felony Sexual Assault. The acquittal of the

Page 8

joinder offenses is still an acquittal. As held in **McDonald v. Wainwright,** 493 F.2d 204 (5th Cir. 1974), "On this record the State not only violated basic principles of Double Jeopardy but collateral Estoppel. Having failed to prove illegal certain acts once. It cannot be permitted to prove again simply by changing the name of the crime. Relator asserts that the State made the same mistake in its inquiry 40 years ago in **Johnson** by its application on the blockburger test which doesn't apply to rules of Collateral Estoppel.

Relator showing that because of closeness of recognized case **Johnson v. Estelle,** 506 F.2d 347 (5th Cir. 1975) clearly defines the outcome of this Petition will end in reversal. we look to the paralles of the two cases:

| JOHNSON V. ESTELLE, 506 F.2d 347 | BEASLEY V. STATE, 426 S.W. 3d 140 |
| --- | --- |
| 1) Mr. Johnson was charged with Burglary with the intent to commit Aggravated Rape. | 1) Mr. Beasley was charged with Burglary with the intent to commit the Sexual Assault. |
| 2) Mr. Johnson was acquitted by a Jury of Burglary with the intent to commit Rape. | 2) Mr. Beasley was acquitted of Burglary with the intent to commit Sexual Assault. |
| 3) Mr. Johnson was reindicted and convicted of Assault with intent to commit Rape. | 3) Mr. Beasley was reindicted and convicted of Sexual Assault. |
| 4) Mr. Johnson filed a application for Writ of Habeas Corpus both 11.07 and 28 U.S.C. §2254 after which both were denied. | 4) Mr. Beasley also filed Application for Writs of Habeas Corpus 11.07 and denied without written order. |
| 5) Mr. Johnson's case was determine by the Court of Appeals for the Fifth Circuit to be Double Jeopardy and relief was Granted (Reversed). | 5) Mr. Beasley now holds this Court to the precedence set by Federal Court and Grant relief. |

The Court reversed the lower Courts decision holding where a determination of innocence one of two issues was the cause of an acquittal and a determination of guilt on both issues is necessary

for a subsequent conviction. The State is Estopped from bringing the action. The Respondent fails to show in there analysis of Johnson where charged offenses are different when in comparison of the elements of offenses in both cases. Since both Relator and **Johnson** where both charged with Burglary with intent in Assaultive crime an both acquitted where the elements of proof are the same also. Both still stem from the same criminal transaction. And both have a joinder of two issues in the first indictment of which the acquittal is the same.

(2) Actual Innocence - No Evidence (DNA). Applicant contents that he was denied due process because the State fails to introduce any evidence of the Relators guilt beyond a reasonable doubt. It shall be necessary for the State to introduce evidence into the records, and said evidence shall be accepted by the Court as basis for its Judgment, and in no event shall a person charged be convicted upon his plea without evidence to support the same. Tex. Code. Crim. Proc. Ann. Art 1.15 See **Johnson**, 722 S.W. 2d at 422. Supporting evidence has not been submitted. **French v. Estelle**, 692 F.2d 1021 (5th Cir. 1982). The (DNA) was not introduced in the first trial nor was it submitted to the Judge in the second proceedings.

## PRAYER

WHEREFORE, PREMISES, CONSIDERED. Relator, respectfully requests to be placed in the recommended out patient and meeting an exceptions held in **Menna v. New York**, 425 U.S. 61, 46 L.Ed 195 96 S.ct 241 (1975). Mr. Justice Brennan agrees that where the State is precluded by the United States Constitution from Haling a defendant into Court on a charge be set aside even if the conviction was enter pursuant to a counsel plea of guilty, Ante at 62, 44-46 L.Ed 2d 197. But on his

Page 10

view that the Double Jeopardy Clause bar the prosecution from offenses growing the same criminal transaction. The State is barred from mounting a successive prosecution. He believes that the proper disposition of the case is not remand but outright reversal See Ashe v. Swenson 397 U.S. 436, 453-54, 25 L.Ed 90 S.ct. 1189 (1970) Tex. Const. Art 1 §14. Relator brought this litigation in good faith and has substantially prevailed through due course of law.

SO PRAYED on this the 14 day of October, 2015.

Respectfully Submitted,

X _____
Vincent E. Beasley
TDCJ-ID # 1867323
James A. Lynaugh Unit
1098, South Hwy 2037
Ft. Stockton, Tx 79735


## VERIFICATION

I, Vincent E. Beasley, TDCJ-ID #1867323, declare under the penalty of perjury that the foregoing set of facts presented within this Application for Writ of Mandamus, Memorandum of Law and Brief in support are true and this Honorable Court will GRANT him Relief.

Respectfully Submitted,

X _____
Vincent E. Beasley
TDCJ-ID #1867323
James A. Lynaugh Unit
1098, South Hwy 2037
Fort Stockton, Tx 79735

Page 11

## CERTIFICATE OF SERVICE

I, Vincent E. Beasley, TDCJ-ID #1867323, certify that this the _14_ day of October, 2015, the foregoing Writ of Mandamus pursuant Rule of Appellate Procedure 52.1, was served upon all parties of interest and Harris County District Attorney, Devon Anderson at the District Attorneys office, 1201 Franklin Suite 600, Houston, Texas 77002-1923. A paper copy of this document will be served by First Class United States Mail Postage pre-paid by Mr. Vincent E. Beasley TDCJ-ID #1867323.

Respectfully Submitted,

X _____
Vincent E. Beasley
TDCJ-ID #1867323
James A. Lynaugh Unit
1098, South Hwy 2037
Fort Stockton, Tx 79735





# MANDATE

## Court of Appeals

## First District of Texas

NO. 01-11-00143-CR

VINCENT ERIC BEASLEY, Appellant

V.

THE STATE OF TEXAS, Appellee

Appeal from the 228th District Court of Harris County.   (Tr. Ct. No. 1204247).

**TO THE 228TH DISTRICT COURT OF HARRIS COUNTY, GREETINGS:**

Before this Court, on the 26th day of July 2012, the cause upon appeal to revise or to reverse your judgment was determined.   This Court made its order in these words:

>     This case is an appeal from the final judgment signed by the trial court on February 24, 2011.   After submitting the case on the appellate record and the arguments properly raised by the parties, the Court holds that there was reversible error in the trial court's judgment. Accordingly, the Court **reverses** the trial court's judgment and **remands** the case to the trial court for further proceedings.

>     The Court **orders** that this decision be certified below for observance.

Judgment rendered July 26, 2012.

Panel consists of Justices Keyes, Bland, and Sharp. Opinion delivered by Justice Bland.

STATE'S
EXHIBIT
D

PENGAD 800-631-6989

C

Court of Appeals of Texas,
Houston (1st Dist.).
Vincent Eric BEASLEY, Appellant
v.
The STATE of Texas, Appellee.

No. 01–11–00143–CR.
July 26, 2012.

**Background:** Defendant who was charged with burglary of a habitation with the intent to commit sexual assault was convicted in the 228th District Court, Harris County, Marc C. Carter, J., of sexual assault. Defendant appealed.

**Holdings:** The Court of Appeals, Jane Bland, J., held that:

(1) sexual assault was not a lesser-included offense of burglary of a habitation with intent to commit sexual assault as the latter offense was alleged in indictment;

(2) erroneous submission of sexual assault as lesser-included offense caused egregious harm;

(3) for double jeopardy purposes, jury effectively acquitted defendant of burglary of a habitation with intent to commit sexual assault by finding him guilty of sexual assault;

(4) acquittal on sexual assault was not appropriate disposition on appeal given the sufficiency of the evidence to establish each element of that offense, and jeopardy did not attach to prevent state from pursuing an indictment for sexual assault; and

(5) case would be remanded for new trial on proper lesser-included offense of criminal trespass, which jury was prevented by jury charge error from considering.

Reversed and remanded for new trial.

West Headnotes

**[1] Indictment and Information 210 ⊂⊃188**

210 Indictment and Information
210XIII Included Offenses
210k188 k. Sufficiency of charge of lesser offense. Most Cited Cases

Constitutional right to notice of criminal charges does not prevent the state from prosecuting or the trial court from instructing the jury on a lesser-included offense of the charged crime, even if the indictment does not expressly allege it. U.S.C.A. Const.Amend. 6; Vernon's Ann.Texas Const. Art. 1, § 10.

**[2] Criminal Law 110 ⊂⊃795(1.5)**

110 Criminal Law
110XX Trial
110XX(G) Instructions: Necessity, Requisites, and Sufficiency
110k795 Grade or Degree of Offense; Included Offenses
110k795(1.5) k. Relation between offenses; sufficiency of charging instrument. Most Cited Cases

To determine whether an offense is a lesser-included offense of another offense, the reviewing court must ask whether the indictment for the greater-inclusive offense either: (1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts, including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice, from which all of the elements of the lesser-included offense may be deduced.

**[3] Indictment and Information 210 ⊂⊃191(.5)**

210 Indictment and Information
210XIII Included Offenses
210k191 Different Offense Included in Offense Charged
210k191(.5) k. In general. Most Cited Cases

Whether an offense is a lesser-included offense of an offense charged in indictment is a question of



STATE'S
EXHIBIT
C

PENGAD 800-631-6989

Billy Lee JOHNSON, Petitioner-Appellant. v. W. J. ESTELLE, Director, Texas Department of
Corrections, Respondent-Appellee
UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
506 F.2d 347; 1975 U.S. App. LEXIS 16662
No. 73-3945
January 9, 1975

**Editorial Information: Prior History**

Appeal from the United States District Court for the Northern District of Texas.
**Judges:** Goldberg, Godbold and Morgan, Circuit Judges.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant sought review of a decision of the United States District Court for
the Northern District of Texas, that denied appellant's writ of habeas corpus petition after appellant was
convicted of assault with intent to commit rape after an acquittal on charges stemming from the same
incident.The denial of defendant's writ of habeas corpus petition on double jeopardy grounds was
improper because the issues presented in a second criminal trial substantially duplicated those presented
in the first trial.

**OVERVIEW:** Appellant was found not guilty by a jury of the crime of burglary of a private residence at
nighttime with intent to commit rape. Five months later appellant was convicted of assault with intent to
commit rape, on charges stemming from the same incident for which he was acquitted in his first trial.
Appellant's conviction was upheld on direct appeal. The state courts and the district court denied
appellant's petition for a writ of habeas corpus based on double jeopardy. The court granted appellant's
writ and released him from custody. The court held that where a determination of innocence on one of two
issues was the cause of an acquittal and a determination of guilt on both issues was necessary for a
subsequent conviction, the state was estopped from bringing the action. The issues presented in the
second trial substantially duplicated those presented in the first trial.

**OUTCOME:** The court granted appellant's writ and released him from custody. The court held that the
issues presented in the second trial substantially duplicated those presented in the first trial. The state was
estopped from bringing an action where a prior determination of innocence existed as to charges.

**LexisNexis Headnotes**

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Double
Jeopardy*
*Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel*
*Civil Procedure > Trials > Jury Trials > Verdicts > General Overview*
*Civil Procedure > Trials > Jury Trials > Verdicts > General Verdicts*

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > General Overview*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > General Overview*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Collateral Estoppel*

The Fifth Amendment, U.S. Const. amend. V, guarantee against double jeopardy was enforceable against
the states through the Fourteenth Amendment, U.S. Const. amend. XIV. Collateral estoppel is part of the
Fifth Amendment double jeopardy prohibition. When an issue of ultimate fact has once been determined
by a valid and final judgment, that issue cannot again be litigated between the same parties in any future
lawsuit.

*Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel*
*Criminal Law & Procedure > Appeals > Standards of Review > General Overview*
*Civil Procedure > Trials > Jury Trials > Jury Instructions > General Overview*
*Civil Procedure > Eminent Domain Proceedings > Jury Trials*

A court reviewing for duplication of issues must: Examine the record of a prior proceeding, taking into
account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury
could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from
consideration.

*Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel*

Where a determination of innocence on one of two issues was the cause of an acquittal and a
determination of guilt on both issues is necessary for a subsequent conviction, the state is estopped from
bringing the action.

*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Assault & Battery >
General Overview*
*Criminal Law & Procedure > Criminal Offenses > Property Crimes > Burglary & Criminal Trespass
> General Overview*
*Criminal Law & Procedure > Criminal Offenses > Sex Crimes > Sexual Assault > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Sex Crimes > Sexual Assault > Rape > General
Overview*

There are three components of a "burglary of a private residence at nighttime with intent to commit rape"
charge which are not involved in an "assault with intent to commit rape" charge. They are: (1) the
defendant entered the house without breaking; (2) that he entered by breaking with intent to commit theft
but that the intent to commit rape was later formed; (3) that there was insufficient evidence that the site of
the alleged crime was a private residence.

*Criminal Law & Procedure > Criminal Offenses > Property Crimes > Burglary & Criminal Trespass
> General Overview*

Texas courts have long held that opening a shut door is an entry by force which constitutes breaking.

*Criminal Law & Procedure > Criminal Offenses > Property Crimes > Burglary & Criminal Trespass
> General Overview*
*Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution*

Texas courts have not put the burden on the prosecutor to show the nature of the intention at the exact
moment of breaking, but have upheld convictions where intention has been read, post hoc, from

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the
restrictions and terms and conditions of the Matthew Bender Master Agreement.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the
restrictions and terms and conditions of the Matthew Bender Master Agreement.

subsequent actions.

**Criminal Law & Procedure > Criminal Offenses > Property Crimes > Burglary & Criminal Trespass > General Overview**

Tex. Penal Code Ann. § 1391, defines private residence as any building or room occupied and actually used at the time of the offense by any person as a place of residence.

**Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel**
**Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > General Overview**
**Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Collateral Estoppel**

The rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.

**Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel**
**Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Double Jeopardy**

Double jeopardy is not a semanticist's paradise, but is to be determined by applying conventional idioms to the jurors' deliberations. There must be some legal necessity basic to one acquittal, not involved in the next trial, to justify a superseding conviction. The court cannot permit initial trial deficiencies to be cured by subsequent trials.

Opinion

Opinion by:        GOLDBERG

Opinion

{506 F.2d 348} GOLDBERG, Circuit Judge:

This case presents a good illustration of the perils of double jeopardy. On May 23, 1967 Billy Lee Johnson was found not guilty of the crime of "burglary of a private residence at nightime with intent to commit rape." Five months later he was convicted of "assault with intent to commit rape," on charges stemming from the same incident for which he was acquitted in his first trial. He was sentenced to 99 years in jail.

His conviction was upheld on direct appeal, Johnson v. State, Tex.Cr.App.1968, 432 S.W.2d 98, and his subsequent petitions for a writ of habeas corpus were denied in State and federal district courts. He appeals to this Court for his writ. Today we find that the issues presented in the second trial substantially duplicated those presented in the first trial. We cannot conclude that a rational jury would have acquitted or convicted defendant on the basis of the differences between the proof necessary to substantiate each indictment.

Unfortunately, our knowledge of the facts and the legal issues presented to the jury in the first case is limited. This Court was advised, after it had received no transcript from the first proceeding, "that no further transcripts are available in the above-styled cause". Letter to the Court, Sept. 25, 1974, from District Court for Northern District of Texas. Our knowledge of the testimony at the first trial is limited

to stipulations between defense attorney and prosecutor about the testimony of the prosecuting witness and the police officer who conducted the initial investigation.

Those stipulations are:

"That if the witness, Mrs. Corah Bell Crandell, were present in Court, she would testify that on May 22, 1967 in the Criminal Court Room Number Five of Dallas County, Texas that she appeared as a witness in Cause Number 67-1034-JL, styled State of Texas Vs. Billy Lee Johnson, which said case was a case charging Billy Lee Johnson with burglary of a private residence at nighttime with intent to commit rape, and after being sworn as a witness in that case, she testified on direct examination that she was eighty-two (82) years of age, that she lived then at the time she testified at 1403 South Fitzhugh, and had lived there for forty (40) years; that on February 4, 1967, she was living there and she had lived and resided in a residence there in a house which had four (4) walls, a ceiling, floor, doors and windows; that about 9:45 that evening she was at home at that location at 1403 South Fitzhugh, and she was watching television when she heard someone at the back side of the house; that she went to the door and saw a man there who said that he wanted to see about buying a car that she had for sale. She testified that she told him that she did not have any car for sale. She identified the man as being a colored man, a member of the Negro race. She testified that colored people lived around her. She testified that she went back in to where the T.V. was, and the next thing she knew the grabbed her by the shoulders. She ran for the phone and tried to call the police or dial the operator, and he grabbed her by the shoulders, dragged her all over the house, turned off the T.V., tore off her dress, threw her down on the front of the couch and was trying to assault her; that she was thrown to the floor, her clothes were torn; that he said that, "I am going to assault you and kill you and take all your money". He also said that he was going to rape her. About that time she testified there was a {506 F.2d 349} bright light thrown on the house and that she screamed, "O God, he is going to kill me", and she resisted him as best she could; that he was trying to have intercourse with her without her consent; that she was a female person, a woman; that his assault on her and his attempts to have carnal knowledge and intercourse with her was without her consent and against her will; that she could not identify the man who was in the house, who was committing the assault upon her. On cross examination she testified that she had the clothing that she had worn at the time of the assault; that the police came out and investigated the case".The stipulated testimony of the police officer was:

"If Officer W. T. Mikel were present in court and sworn as a witness, he would testify that he is a member of the Dallas Police Department assigned to the Radio Patrol Division with particular specialty of the Canine Corps, and he worked in that capacity on February 4 and 5, 1967 when, with a police dog named Rex, at about 9:45 p.m., he was near 1403 South Fitzhugh and heard a woman scream. He could not determine where the screams were coming from, but he did stop his police car and got out and determined that the screams were coming from the house at 1403 South Fitzhugh. He could hear a woman screaming, "Help, you are killing me," or words to that effect. He testified that he went to the front door of the house and that he was let in by a woman whom he identified as Mrs. Corah Bell Crandell; that her clothes were torn; that she said something to the effect, "He is going out the back door", and he ran around to the back door and saw a man whom he identified in court as the Defendant coming out the back door or on the back porch of Mrs. Crandell's house; that he hollered for him to stop; that thereafter he shot him two or three times and the Defendant was badly wounded and he remained there at the scene until he was removed by the ambulance".

We also have a transcript of the instruction which the judge gave the jury in this first case. We will refer to it below as it elucidates particular points.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

I.

In Benton v. Maryland, 1969, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707, the Supreme Court held that the Fifth Amendment guarantee against double jeopardy was enforcible against the states through the Fourteenth Amendment. The following term, the Court held that collateral estoppel is part of the Fifth Amendment double jeopardy prohibition. Ashe v. Swenson, 1970, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469. "When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S. Ct. at 1194, 25 L. Ed. 2d at 475. The Court in Ashe went on to say that where the jury in the first trial had returned a general verdict, a court reviewing for duplication of issues must:

> Examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.

397 U.S. at 444, 90 S. Ct. at 1194, 23 L. Ed. 2d at 475-476, quoting Mayers & Yarborough, Bis Vexari: New Trials and Successive Prosecutions, 1960, 74 Harv.L.Rev. 1, 38-39.

Ashe was acquitted in his first trial of robbery of one of the players in a poker game. He was then tried and convicted for robbing another player in the game. Since the only controverted issue in each trial was the identity of the robber, the Court held that the second trial, by requiring relitigation, had put the defendant in double jeopardy.

As noted by the United States Magistrate in the present case, there are two {506 F.2d 350} issues upon which the jury in the first trial could have based its acquittal, which were controverted in the second trial. One was the identity of Mrs. Crandall's assailant and the other was the intention of that assailant to commit rape. The State argues that Ashe applies only where one issue is in question in both trials.

We disagree with the State. Application of the rule depends upon whether some issue necessary for the prosecution's case in the second trial has necessarily been found for the defendant in the first trial. See Sealfon v. United States, 1948, 332 U.S. 575, 68 S. Ct. 237, 92 L. Ed. 180. Thus the fact that either identity or intent could have been the basis for the first jury's decision does not foreclose the application of Ashe v. Swenson, because both factors would have to be proven in order to convict at the second trial. Where a determination of innocence on one of two issues was the cause of an acquittal and a determination of guilt on both issues is necessary for a subsequent conviction, the State is estopped from bringing the action.

II.

The State contends, however, that a "rational jury" could have based its decision in the first trial on the State's failure to establish essential elements not in controversy in the second trial. If this is in fact the case, then the double jeopardy criterion would, of course, not apply.

In the present case we find that no rational jury could have acquitted on the basis of the different "issues" presented in the first trial, absent a defendant's reliance on those factors. 1 The State cannot produce a record here showing such reliance. 2 The State's suggested bases for acquittal in the first trial are nothing more than the sheerest speculation.

There are three components of a "burglary of a private residence at nighttime with intent to commit rape" charge which are not involved in an "assault with intent to commit rape" charge and upon which the State believes the jury in the first trial could have based its verdict of acquittal. They are: "[(1)] the Petitioner entered the house without breaking; (2) that he entered by breaking with intent to commit

theft but that the intent to commit rape was later formed; (3) that there was insufficient evidence that the site of the alleged crime was a private residence." Appellee's Brief at 6.

We address ourselves to each issue, in order. 1) Petitioner entered without breaking.

That this is an improbable jury rationale is evident from the trial court's jury instruction in the first trial:

> By the term "entry" into a house is meant every kind of entry but one made by free consent of the occupant, or of one authorized to give such consent. By the term breaking is meant that the entry must be made with actual force. The slightest force, however, is sufficient to constitute breaking, such as lifting a latch of a door that is shut or pulling or pushing open a door. 3

{506 F.2d 351} There is no available testimony offering a scintilla of evidence that defendant might have come into the Crandall home without breaking, and the judge's charge to the jury gave an expansive definition of breaking. No rational jury could have acquitted, on the grounds that defendant did not break into the home, on the basis of what we have before us.

The State's second alternative, that the jury may have doubted that the requisite intent existed at the moment of entry, is equally implausible. With not a speck of factual foundation the State speculates that the jury may have believed that Johnson entered the Crandall house with another purpose, such as burglary, but that, upon casting his eyes on this eighty-two year old woman he was suddenly overcome with a passion which caused him to change his intention.

The judge's instruction to the jury would not alert it to a special concern over the moment when defendant formed his intention. The judge's instructions on this score were:

You are instructed that the offense of burglary of a private residence in the nighttime with intent to commit rape, is constituted by entering a house, that is, a private residence, by force, threats or fraud, at night, or in any manner by entering a private residence at any time, by either day or night, and remaining concealed therein until night, with the intent of committing the offense of rape. The charge in this case is the entry into a private residence, at night, by force, with the intent to commit rape. The punishment is by confinement in the Texas Department of Corrections for any term of years not less than five. . . . before you would be warranted in finding a verdict of guilty, you must find from the evidence, beyond a reasonable doubt, that the entry was made in the nighttime, and with the intent to commit the crime of rape.

While the judge gave individual definitions of many of the terms in the charge he did not specifically draw attention to the proposition that the intention must be in the mind of the burglar at the time of entry. 4

We do not believe that any rational jury, sua sponte, could have been moved to acquit defendant on the grounds that his intention turned from robbery to rape in midflight from the threshold to Mrs. Crandall.

Finally, the State argues that the jury could rationally have doubted that the alleged incident transpired in a "private residence." This is the most transparent of the State's speculations. In his instruction, the judge told the jury:

"Private residence," as used in the statute, means any building or room occupied and actually used at the time of the offense by any person or persons as a place of residence. 5

Mrs. Crandall testified in her first trial "that she lived then at the time she testified at 1403 South Fitzhugh, and has lived there for forty (40) years; that on February 4, 1967, she was living there and she had lived and resided in a residence there in a house which had four (4) walls, a ceiling, floor, doors and windows . . .;" {506 F.2d 352} and since Officer Mikel is stipulated to have testified that he

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

"determined that screams (emphasis added), there is simply nothing to suggest that Mrs. Crandall was not in a residence and that the jury could have entertained real and rational doubts on this issue.

III.

This Court usually finds that its supply of ingenious semantic puzzles and fantastic hypotheticals emanate from the supplications of defendants. In keeping with deeply rooted American notions of justice and Constitutional edicts, we examine these applications to see if in fact the defendant was denied due process in his trial or whether the facts presented lever the probability that he engaged in criminal activity below the "reasonable doubt" marker. But fantastic hypotheticals introduced by the State to avoid the defense of double jeopardy are subject to a different standard. We must see if a "rational jury" could have based its decision on such factors, guided by the principle enunciated in Ashe, 397 U.S. at 444, 90 S. Ct. at 1194, 25 L. Ed. 2d at 475, that "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." By its injunction to apply collateral estoppel with "realism and rationality" we believe that the Supreme Court means that we should not allow a second trial, merely because technical requisites of the first charge are not involved in the second, where there is no evidence suggesting that those factors were even presented to the first jury for its active consideration. In the present case the alternative grounds hypothecated by the State are not of the sort which could move a rational jury, on its own, to acquit.

We are convinced that both juries stood their decisions on identity of assailant and intent to rape and did not engage in mental gymnastics so as to land on differing components. Double jeopardy is not a semanticist's paradise, but is to be determined by applying conventional idioms to the jurors' deliberations. There must be some legal necessity basic to one acquittal, not involved in the next trial, to justify a superseding conviction. We cannot permit initial trial deficiencies to be cured by subsequent trials. There are only four quarters to a football game. The exorcised double jeopardy is the constitutional eliminator of the might have beens. Puristic parallelism is not an absolute in the law of double jeopardy. Multitudinous criminal charges may spring from the same incident. The State's argument in the present case would nullify the doctrine of double jeopardy because any slight deviation in the indictment would give the State another Monday morning quarter.

It is therefore ordered that the petition of Billy Lee Johnson for a writ of habeas corpus is granted and that he be released from custody.

### Footnotes

1

We keep in mind the warning given in the same article that the Supreme Court quoted from in *Ashe*:

> It is probable that in the large majority of criminal prosecutions the defendant will litigate only one issue. For example, he will present an alibi, plead a lack of requisite criminal intent, or deny that the act was perpetrated at all. If a latter court is permitted to state that the jury may have disbelieved substantial and uncontradicted evidence of the prosecution on a point the defendant did not contest, the possible multiplicity of prosecutions is staggering.

Mayers & Yarbrough, 74 Harv.L.Rev. at 37-38.

2

There is no suggestion that the lack of a record owes in any way to the fault of petitioner Johnson or his counsel, so we need not consider whether showing of such fault would raise any hostile presumption.

3

Nor was there room for interpretation of the meaning of "breaking" by defense counsel. The Texas courts have long held that opening a shut door is an entry by force which constitutes breaking. See, e.g., Mixon v. State, Tex.Cr.App.1966, 401 S.W.2d 806.

It is worthy of note that appellant contends in his brief, and the State does not deny, that among the items of evidence submitted in the first trial, and resubmitted in the second, was a picture of a screen door cut open.

4

Texas courts have not put the burden on the prosecutor to show the nature of the intention at the exact moment of breaking, but have upheld convictions where intention has been read, *post hoc*, from the subsequent actions. *See* e.g., Friga v. State, Tex.Cr.App. 1973, 488 S.W.2d 430; Eagan v. State, Tex.Cr.App., 1970, 451 S.W.2d 514; Dickson v. State, Tex.Cr.App.1901, 64 S.W. 1043. So, there can be no presumption of prosecutorial failure on this issue.

5

The statute to which the judge referred is Vernon's Ann.Tex.Penal Code Art. 1391, which defines private residence as "any building or room occupied and actually used at the time of the offense by any person as a place of residence."

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Thomas J. McDONALD, Petitioner-Appellant, v. Louie L. WAINWRIGHT, Respondent-Appellee
UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
493 F.2d 204; 1974 U.S. App. LEXIS 8963
No. 73-1656
April 26, 1974

**Judges:** Aldrich, Senior Circuit Judge, * and Bell and Gee, Circuit Judges.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Petitioner appealed an order of the United States District Court, which denied his petition for habeas corpus after he was convicted in a state court of breaking and entering with intent to commit rape, having earlier been found not guilty of assault with intent to commit rape and rape. A denial of petition for writ of habeas corpus was reversed for double jeopardy reasons where petitioner was convicted of breaking and entering with intent to commit rape and rape, having earlier been acquitted of assault with intent to commit rape and rape.

**OVERVIEW:** Petitioner was charged in a state court with breaking and entering with intent to commit rape and, separately, with assault with intent to commit rape and rape. The first charge was postponed, while the others tried together. At this trial the state court charged the jury that it could convict petitioner for either of the two specified offenses or for attempted rape, as a lesser-included offense. The jury found him not guilty. Thereafter, defendant was convicted by another jury on the charge of breaking and entering with intent to commit rape on the same evidence as the first. The conviction was affirmed, and petitioner sought relief, which the lower court denied. Petitioner contended that he could not be tried for breaking and entry with intent because of his acquittal not only for rape, but also of an attempt to commit rape. The court reversed the lower court's decision because it was an impermissible attempt to convict petitioner for one crime by proof of another that had been determined that he did not commit. The court ruled that the state not only violated basic principles of collateral estoppel, but of double jeopardy. The court remanded with instructions to grant writ.

**OUTCOME:** The court reversed the lower court's decision that denied petitioner's application for a writ of habeas corpus, holding that it was impermissible to convict petitioner for one crime by proof of another that had been determined that he did not commit. The court ruled that the state not only violated basic principles of collateral estoppel, but of double jeopardy. The court remanded with instructions to grant writ.

### LexisNexis Headnotes

*Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > General Overview*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Collateral Estoppel*

Having failed to prove certain illegal acts once, the state cannot be permitted to prove them again simply

by changing the name of the crime.

Opinion

Opinion by:          ALDRICH, SR.

Opinion

{493 F.2d 205} ALDRICH, Senior Circuit Judge:

This is an appeal from the denial of a petition for habeas corpus. Thomas McDonald, hereinafter defendant, was charged in the Florida state court with breaking and entering with intent to commit rape, and, by separate indictment, with assault with intent to commit rape, and rape. The first charge was postponed, and the remaining two tried together. At this trial the court charged the jury that it could convict defendant for either of the two specified offenses, or for attempted rape, as a lesser included offense. The jury found him not guilty.

The evidence at the trial, which came from the alleged victim, a Mrs. Certain, the police, and a codefendant, Taylor, was to the effect that Taylor and defendant in the nighttime broke a rear door of, and entered, Certain's apartment, where each defendant had intercourse with her. Certain testified that it was against her will; Taylor testified that she consented. Defendant did not take the stand. The state agrees with defendant that the jury must have found consent.

Thereafter defendant was tried to another jury on the charge of breaking and entering with intent to commit rape. Except that the evidence as to the breaking was more detailed, it is conceded {493 F.2d 206} that, as the district court found, the evidence at this trial was "basically the same" as at the first trial, including Certain's testimony that she did not consent. Defendant was convicted, and on appeal the judgment was affirmed. McDonald v. State, 249 So. 2d 451 (4 D.C.A. Fla. 1971), cert. dismissed, 253 So. 2d 708 (Sup. Ct. Fla.). The court took the position, with which the district court subsequently agreed, that defendant could well have entered with intent to commit rape even though, because Certain proved to be willing, he had no occasion to carry out his purpose. The state's brief puts it, "Although the raper had the requisite intent upon breaking and entering to commit rape, he was thwarted before attempting the act of rape." Although we have seen the proposition more felicitously expressed,[1] the state's logic is impeccable. There are, however, a number of difficulties.

The most obvious difficulty is that the state did not try its case on that theory. Faced with the burden of showing defendant's intent at the time of entry, which, unexplained, might equally have been simply to attempt to persuade, the state, both by evidence and oral argument, sought to prove an initial intent to rape by the alleged circumstance that a rape occurred. But whether one call it double jeopardy, or collateral estoppel by judgment, this was a naked and impermissible attempt to convict defendant for one crime by proof of another which, as between defendant and the state, it had been conclusively determined defendant did not commit. The evidence of non-consent was constitutionally inadmissible, Ashe v. Swenson, 1970, 397 U.S. 436, 446, 90 S. Ct. 1189, 25 L. Ed. 2d 469; Turner v. Arkansas, 1972, 407 U.S. 366, 92 S. Ct. 2096, 32 L. Ed. 2d 798 (per curiam), and clearly prejudicial. The verdict was fatally tainted. Burgett v. Texas, 1967, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319; Bumper v. North Carolina, 1968, 391 U.S. 543, 550, 88 S. Ct. 1788, 20 L. Ed. 2d 797. Indeed, with this evidence excluded, it may be asked on what basis could a jury, simply because defendant made a felonious entry of one character, find beyond a reasonable doubt that at the time he intended another? [2]

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Defendant goes further, and asserts not merely trial error, but that he can not even be tried for breaking and entering with intent because he has been acquitted, not only of rape, but of an attempt to commit rape under circumstances where such an attempt would have had to have been found if he had committed the alleged breaking and entry with the requisite intent. The state initially sought to answer this by saying flatly that "neither breaking and entering nor intent while doing so were before the first jury," but it later realized that this allegation was more easily made than proved. The evidence of breaking and entering was introduced before the first jury, and the court specifically instructed the jury as to an attempt, and as to the necessity for both an intent to commit the crime and an overt act. *See* Groneau v. State, 201 So. 2d 599, 603 (4 D.C.A. Fla. 1967), cert. denied, 207 So. 2d 452 (Sup. Ct. Fla.). The state is reduced to arguing that breaking and entering was merely "preparation," and not an overt act sufficient to constitute an attempt. Passing the fact that in any event defendant was placed in jeopardy for an attempt, we cannot think of any more classic overt act 3 than something which, like breaking and entering with intent, is a {493 F.2d 207} felony itself. 4 Charging the jury on this evidence as to attempted rape necessarily placed before it the question whether defendant broke and entered with intent to rape.

On this record the state not only violated basic principles of collateral estoppel, but of double jeopardy. Having failed to prove certain illegal acts once, it cannot be permitted to prove them again simply by changing the name of the crime. Harlow v. United States, 5 Cir., 1962, 301 F.2d 361, 375, cert. denied, 371 U.S. 814, 83 S. Ct. 25, 9 L. Ed. 2d 56, reh. denied, 371 U.S. 906, 83 S. Ct. 204, 9 L. Ed. 2d 167; United States v. Sabella, 2 Cir., 1959, 272 F.2d 206, 210-212.

Reversed and remanded with instructions to grant the writ.

Footnotes

.

1

"He in a few minutes ravished this fair creature, or at least would have ravished her, if she had not, by a timely compliance, prevented him." H. Fielding, Jonathan Wild, Book III, ch. 7.

2

We may add that if the jury were to learn of defendant's conduct once within the apartment, he would be entitled to an instruction that it had been conclusively found to have been consented to.

3

"Any act toward the commission of such an offense." Fla. Stat. Ann. § 776.04 (1965).

4

"Commencement of the consummation . . . . Such progress that it would be consummated unless interrupted by circumstances independent of the will of the attempter." Groneau v. State, 201 So. 2d at 603. *Cf.* fn. 1, ante.

© 2015 Matthew Bender & Company. Inc.. a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Darrell Gene BLACKBURN, Petitioner-Appellant, v. Armond CROSS, Chairman and
Commissioners, Probation & Parole Commission, State of Florida, Respondents-Appellees
UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
510 F.2d 1014; 1975 U.S. App. LEXIS 15361
No. 74-2333
April 2, 1975

**Editorial Information: Subsequent History**

Rehearing and Rehearing En Banc Denied August 6, 1975.

**Editorial Information: Prior History**

Appeal from the United States District Court for the Southern District of Florida.
**Judges:** Morgan and Clark, Circuit Judges, and Gordon, District Judge.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant appealed from a judgment entered by the United States District
Court for the Southern District of Florida, which denied his petition for a writ of habeas corpus. Defendant
had been convicted for breaking and entering a dwelling and unlawfully assaulting a person therein and for
attempted crime against nature.A trial court committed reversible error at a defendant's trial for assault
when it admitted the testimony of a witness who claimed that she was also assaulted by the defendant
where the defendant had previously been acquitted of assaulting her.

**OVERVIEW:** Defendant was convicted for breaking and entering a dwelling and unlawfully assaulting a
person therein and for attempted crime against nature. At trial, the victim and two other women who had
also allegedly been assaulted by defendant testified as to his identity. Defendant filed a petition for a writ
of habeas corpus, which was denied by the district court. On appeal, the court reversed the district court
judgment and remanded with instructions to issue the writ, subject to the state's right to retry defendant.
The court found that the testimony of one the prior victims was improperly admitted because defendant
had previously been acquitted of assaulting her. For authority, the court relied on a case that was decided
after defendant's trial which held that evidence of such prior acquittals was prejudicial and violative of the
double jeopardy clause. The court found that the new rule warranted retroactive application because it
went to the basic integrity and accuracy of the guilt-innocence determination. The admission of the
witness' testimony was therefore constitutional error, and the court could not say that it was harmless
beyond a reasonable doubt.

**OUTCOME:** The court reversed the judgment of the district court which denied defendant's petition for a
writ of habeas corpus because defendant's constitutional rights were violated when the trial court admitted
evidence of an earlier assault for which defendant had previously been acquitted. The court remanded the
case with instructions to issue the writ of habeas corpus, subject to the state's right to retry defendant.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the
restrictions and terms and conditions of the Matthew Bender Master Agreement.

**LexisNexis Headnotes**

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Double
Jeopardy*
*Criminal Law & Procedure > Double Jeopardy > Attachment Jeopardy*
*Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > General Overview*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > General Overview*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Collateral Estoppel*
*Criminal Law & Procedure > Double Jeopardy > Double Jeopardy Protection > Acquittals*

The double jeopardy clause, which includes the doctrine of collateral estoppel, prohibits the state from
relitigating, for any purpose, an issue which was determined in a prior prosecution of the same party.
Hence, there is no difference between relitigating an ultimate fact or an evidentiary fact; relitigation of
either is prohibited.

*Criminal Law & Procedure > Habeas Corpus > Retroactivity of Decisions > General Overview*

The constitution neither prohibits nor requires retroactive application of new decisions.

*Criminal Law & Procedure > Habeas Corpus > Retroactivity of Decisions > General Overview*

The standards for retroactive application are codified in a three-pronged test: (a) The purpose to be
served by the new standards, (b) the extent of reliance by law enforcement authorities on the old
standards, and (c) the effect on the administration of justice of the new standards. Foremost among these
factors is the purpose to be served by the new constitutional rule. Substantial consideration should be
given the last two factors only when the purpose of the rule in question does not clearly favor either
retroactivity or prospectivity.

*Criminal Law & Procedure > Habeas Corpus > Retroactivity of Decisions > General Overview*

Where the major purpose of a new constitutional doctrine is to overcome an aspect of the criminal trial
that substantially impairs its truthfinding function and so raises serious questions about the accuracy of
guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good faith
reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact
on the administration of justice has sufficed to require prospective application in these circumstances.

*Criminal Law & Procedure > Habeas Corpus > Retroactivity of Decisions > General Overview*

Retroactivity has been denied where a new rule serves a broad social policy, where the rule does not go to
the fairness of the trial, or where the flaw in the fact-finding process is either of secondary importance or of
infrequent occurrence. But where a new rule is fashioned to correct a serious flaw in the fact-finding
process and therefore goes to the basic integrity and accuracy of the guilt-innocence determination,
retroactive effect is required.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Double
Jeopardy*
*Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > General Overview*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > General Overview*

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the
restrictions and terms and conditions of the Matthew Bender Master Agreement.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Collateral Estoppel*

The double jeopardy clause, which includes the doctrine of collateral estoppel, prohibits a state from relitigating any issue which was determined in a prior prosecution of the same party. The purpose of this rule is bound up in the whole complex of values that the guarantee against double jeopardy represents.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Double Jeopardy*
*Criminal Law & Procedure > Double Jeopardy > General Overview*

The policy underlying the prohibition against double jeopardy is that the state with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal, and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Double Jeopardy*
*Criminal Law & Procedure > Double Jeopardy > Attachment Jeopardy*

It is fundamentally unfair and totally incongruous with our basic concepts of justice to permit the sovereign to offer proof that a defendant committed a specific crime which a jury of that sovereign has concluded he did not commit. Otherwise a person could never remove himself from the blight and suspicious aura which surround an accusation that he is guilty of a specific crime.

*Criminal Law & Procedure > Habeas Corpus > Retroactivity of Decisions > General Overview*

People are not to be punished by procedures which present a serious risk that the issue of guilt or innocence may not have been reliably determined, or which produce a clear danger of convicting the innocent. Practices, procedures, or statutes which present the probability of risk of such consequences must be eradicated and the surest way is to prescribe retroactivity.

Opinion

Opinion by:        MORGAN

Opinion

{510 F.2d 1016} MORGAN, Circuit Judge.

At issue in this case is the retroactivity *vel non* of the principle announced in Wingate v. Wainwright, 464 F.2d 209 (5th Cir. 1972). We believe that the weight of precedent supports the retroactive application of the *Wingate* principle, and we therefore reverse the district court.

I.

On January 19, 1967, the petitioner was charged in an amended information with (1) breaking and entering a dwelling and unlawfully assaulting a person therein, and (2) attempted crime against nature. The petitioner entered a plea of not guilty and the trial by jury commenced.

At trial, Rosemarie Fletcher identified the petitioner as the person who broke into her apartment and attempted to sexually assault her. She had seen only the profile and back of her assailant, but she furnished police with a description of the assailant and she identified the petitioner in a line-up. In addition to Fletcher, the state presented the testimony of two additional women, Catherine Austin and Patricia McCune, both of whom lived in the same apartment complex as Fletcher. Austin and McCune identified the petitioner as the assailant who had likewise broken into their apartments and had sexually assaulted them.

The petitioner had previously been acquitted after a trial by jury of the assault on McCune. At trial for the assault on Fletcher, McCune's testimony was admitted over petitioner's objection as evidence of a similar offense tending to establish the identity of the petitioner as Fletcher's assailant.

Petitioner testified in his own behalf and presented an alibi defense. In addition to the three positive identifications of the petitioner, the state presented evidence that four fingerprints of one hand and the thumb print of the other hand lifted from the jalousie window slats of the kitchen door of Fletcher's apartment (where the breakin occurred) were those of the petitioner.

The guilty verdict was followed by an unsuccessful direct appeal in which the petitioner claimed that McCune's testimony was improperly admitted into evidence. Blackburn v. State, 208 So. 2d 625 (Fla.App.1968). Defendant's petition for a writ of habeas corpus -- alleging that the holding in *Wingate* should be retroactively applied to his trial, and, hence that McCune's testimony was inadmissible -- was subsequently denied by the district court. 1

II.

The collateral estoppel notion, upon which petitioner relies, has been applied in the area of criminal law only recently.

In Ashe v. Swenson, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970) a federal {510 F.2d 1017} habeas corpus petitioner attacked his state conviction for the robbery of one of six men engaged in a poker game. The petitioner had previously been acquitted of the robbery of another one of the same poker players. The single issue in dispute at both trials was whether the petitioner had been one of the robbers. The Supreme Court held that the federal notion of collateral estoppel precluded relitigation of the petitioner's participation in the robbery and that this rule is embodied in the double jeopardy clause of the Fifth Amendment.

In Wingate v. Wainwright, 464 F.2d 209 (5th Cir. 1972) this Circuit significantly expanded the *Ashe* holding. In *Wingate* a federal habeas corpus petitioner attacked his conviction for the robbery of a small store. At his trial, the state introduced evidence tending to show that Wingate had committed four additional robberies; he had been tried for and acquitted of two of these robberies. In his closing remarks there was heavy reliance by the prosecutor on the evidence of additional robberies.

This court held that *Ashe* does not merely bar a subsequent state prosecution, the maintenance of which depends upon a successful relitigation of a fact issue which had previously been settled adversely to the state by an earlier acquittal. Rather, the double jeopardy clause, which includes the doctrine of collateral estoppel under *Ashe*, prohibits the state from relitigating, for any purpose, an issue which was determined in a prior prosecution of the same party. Hence, there is no difference between relitigating an ultimate fact or an evidentiary fact; relitigation of either is prohibited.

III.

Blackburn's trial occurred before our decision in *Wingate*. Since the facts before us are virtually identical to those of *Wingate*, we must determine whether *Wingate* is to be applied retroactively. 2

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

{510 F.2d 1018} In Linkletter v. Walker, 381 U.S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965), the Supreme Court held that the Constitution neither prohibits nor requires retroactive application of new decisions. In considering the retroactivity of subsequent rulings, the Court resolved to look at the prior history of the rule in question, its purpose and effect, and whether retrospective effect furthers or retards its operation. *Id.* at 626, 85 S. Ct. 1731.

Shortly thereafter, the standards for retroactive application were codified in a three-pronged test:

(a) The purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of the new standards. Stovall v. Denno, 388 U.S. 293, 297, 87 S. Ct. 1967, 1970, 18 L. Ed. 2d 1199 (1967).

"Foremost among these factors is the purpose to be served by the new constitutional rule." Desist v. United States, 394 U.S. 244, 249, 89 S. Ct. 1030, 1033, 22 L. Ed. 2d 248 (1969). Substantial consideration should be given the last two factors "only when the purpose of the rule in question [does] not clearly favor either retroactivity or prospectivity." *Id.* at 251, 89 S. Ct. at 1035; *see* Michigan v. Payne, 412 U.S. 47, 55, 93 S. Ct. 1966, 36 L. Ed. 2d 736 (1973); United States v. Scott, 425 F.2d 55, 58 (9th Cir. 1970) (en banc). Moreover,

where the major purpose of a new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truthfinding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances. Williams v. United States, 401 U.S. 646, 653, 91 S. Ct. 1148, 1152, 28 L. Ed. 2d 388 (1971) (plurality opinion).

Hence, retroactivity has been denied where a new rule serves a broad social policy, Williams v. Estelle, 500 F.2d 206, 208 (5th Cir. 1974), where the rule does not go to the fairness of the trial, or where the flaw in the fact-finding process is either of secondary importance or of infrequent occurrence, United States v. Scott, 425 F.2d 55 (9th Cir. 1970) (en banc) and cases cited therein. But where a new rule is fashioned to correct a serious flaw in the fact-finding process and therefore goes to the basic integrity and accuracy of the guilt-innocence determination, retroactive effect is required. United States v. Scott, *supra*, at 58 and cases cited therein; *see* Williams v. Estelle, *supra*, 500 F.2d at 208.

We must therefore determine the purpose behind the *Wingate* rule and whether this purpose relates to the integrity of the fact-finding system. The *Wingate* case, of course, held that the double jeopardy clause, which includes the doctrine of collateral estoppel, prohibits a state from relitigating any issue which was determined in a prior prosecution of the same party. The purpose of this rule is bound up in the whole complex of values that the guarantee against double jeopardy represents. *Cf.* Tehan v. Shott, 382 U.S. 406, 414, 86 S. Ct. 459, 15 L. Ed. 2d 453 (1966).

The policy underlying the prohibition against double jeopardy

is that the State with all its resources and power should not be allowed to {510 F.2d 1019} make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. United States v. Jorn, 400 U.S. 470, 479, 91 S. Ct. 547, 554, 27 L. Ed. 2d 543 (1971).

In order to protect "a man who has been acquitted from having to 'run the gantlet' a second time," *Ashe* incorporated the rule of collateral estoppel into the guarantee of double jeopardy. Ashe v.

Swenson, 397 U.S. 436, 446, 90 S. Ct. 1189, 1195, 25 L. Ed. 2d 469 (1970). *Wingate* expanded this notion to include evidentiary as well as ultimate facts because

it is fundamentally unfair and totally incongruous with our basic concepts of justice to permit the sovereign to offer proof that a defendant committed a specific crime which a jury of that sovereign has concluded he did not commit. Otherwise a person could never remove himself from the blight and suspicious aura which surround an accusation that he is guilty of a specific crime. Wingate v. Wainwright, 464 F.2d 209, 215 (5th Cir. 1972). The *Wingate* court indicated that this evidence of prior acquittals was "prejudicial" and, hence, admission of such evidence could certainly influence the integrity of the fact-finding system. 3 We therefore find that the *Wingate* rule warrants retroactive application.

IV.

The state argues that any error made in Blackburn's trial was harmless, but petitioner responds that it would be inappropriate to apply the "harmless error analysis" to a double jeopardy claim. We need not decide whether a collateral estoppel claim is susceptible to harmless error analysis, for we find that the error committed in this case could not be adjudged harmless even if the appropriate constitutional standards were applied.

Recent Supreme Court decisions regarding "harmless constitutional error" inquire as to "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Chapman v. California, 386 U.S. 18, 23, 87 S. Ct. 824, 827, 17 L. Ed. 2d 705 (1967). Only if the court can declare with confidence "beyond a reasonable doubt" that such a possibility is excluded by the record can it declare a constitutional error harmless. *Id.* at 24, 87 S. Ct. 824; *see* Schneble v. Florida, 405 U.S. 427, 430, 92 S. Ct. 1056, 31 L. Ed. 2d 340 (1972); Milton v. Wainwright, 407 U.S. 371, 92 S. Ct. 2174, 33 L. Ed. 2d 1 (1972); Harrington v. California, 395 U.S. 250, 89 S. Ct. 1726, 23 L. Ed. 2d 284 (1969); Null v. Wainwright, 508 F.2d 340 (5th Cir. 1973); Vaccaro v. United States, 461 F.2d 626, 637-38 (5th Cir. 1972).

The evidence against Blackburn was quite convincing. However, in his closing argument the prosecuting attorney disparaged the testimony of Fletcher (the alleged victim in the case *sub judice*) and relied upon the combined effect of all three identifications to establish reliability. 4 Under these circumstances {510 F.2d 1020} it is impossible for us to conclude that the erroneous admission of McCune's testimony was harmless beyond a reasonable doubt.

Reversed and remanded with directions to issue the writ, subject to the state's right to re-try the defendant.

Footnotes

1

Petitioner was paroled on May 1, 1973, from the sentence presently under attack.
2

Petitioner contends that the *Wingate* court's application of the modified *Ashe* principle to a conviction that became final prior to the date of the *Ashe* decision is indicative of this court's view of the retroactivity question. That is, petitioner contends that this court applied the collateral estoppel rule retroactively in reversing the denial of habeas corpus relief to Wingate.

While there is some dicta suggesting that a review of a denial of habeas corpus relief effectively

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

enunciates a retroactive rule, see Johnson v. New Jersey, 384 U.S. 719, 729, 86 S. Ct. 1772, 16 L. Ed. 2d 882 (1966); Williams v. Estelle, 500 F.2d 206 (5th Cir. 1974), we need not decide that question because we find that a retroactive application of the *Wingate* rule is required by the Linkletter v. Walker, 381 U.S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965) analysis.

Petitioner also contends that Robinson v. Neil, 409 U.S. 505, 93 S. Ct. 876, 35 L. Ed. 2d 29 (1973) mandates a retroactive application of *Wingate*. In *Robinson* the Supreme Court held that Waller v. Florida, 397 U.S. 387, 90 S. Ct. 1184, 25 L. Ed. 2d 435 (1970) which barred a state and municipal prosecution for the same act or offense, fully retroactive. The court indicated that "the prohibition against being placed in double jeopardy is . . . not readily susceptible of analysis under the *Linkletter* line of cases." Robinson v. Neil, *supra*, 409 U.S. at 508, 93 S. Ct. at 878.

We believe that the Supreme Court's retroactive application of double jeopardy principles, see Robinson v. Neil, *supra*, lends support to the conclusion that the *Wingate* decision should be retroactively applied. *Cf.* Vaccaro v. United States, 461 F.2d 626, 632-33 (5th Cir. 1972). However, we do not believe that *Robinson* is entirely dispositive of the question before us, for the rationale of *Robinson* was based upon the fact that double jeopardy principles normally preclude a new trial entirely, while procedural guarantees merely relate to the method of conducting trials:

> The guarantee against double jeopardy is significantly different from procedural guarantees held in the *Linkletter* line of cases to have prospective effect only. While this guarantee, like the others, is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial. A number of the constitutional rules applied prospectively only under the *Linkletter* cases were found not to effect the basic fairness of the earlier trial, but to have been directed instead to collateral purposes such as the deterrence of unlawful police conduct, Mapp v. Ohio, *supra*. In *Waller*, however, the Court's ruling was squarely directed to the prevention of the second trial's taking place at all, even though it might have been conducted with a scrupulous regard for all of the constitutional procedural rights of the defendant. Robinson v. Neil, *supra*, 409 U.S. at 509, 93 S. Ct. at 878.

While the *Wingate* rule is rooted in the principle of double jeopardy, its operation merely precludes the introduction of certain disfavored evidence. In light of the *Robinson* rationale it would be unreasonable for us to conclude that the Supreme Court in *Robinson* was addressing itself to the exclusion of evidence of prior crimes and, hence, intended *Robinson* to apply to procedural guarantees based upon the principle of double jeopardy. We therefore prefer to rest our decision upon the *Linkletter* line of cases.

3

*See* Vaccaro v. United States, 461 F.2d 626, 633 (5th Cir. 1972): "We distill from this whole body of cases the Court's value judgment that people . . . are not to be punished by procedures which present 'a serious risk that the issue of guilt or innocence may not have been reliably determined,' or which produce a 'clear danger of convicting the innocent.' Practices, procedures or statutes which present the probability of risk of such consequences must be eradicated and the surest way is to prescribe retroactivity" (footnotes omitted).

4

In his closing argument, the prosecuting attorney said:

> Where is your reasonable doubt about Catherine Austin identifying this man? Rosemarie Fletcher seeing his profile, the thinning hair in the back of the head, possibly her alone I would hate to convict this man on that kind of identification [sic]. I would be loathed too [sic], even in the case of the kind of testimony when you are trying a man by [sic] the heinous crime, but we are trying him

because he committed a crime against the laws of the State of Florida. So that Rosemarie Fletcher, with the profile, with the thinning hair, this is very weak, but Catherine Austin, now we've got the law of probability working. Take that again. It gets better, much better. Pat McCune. Now we've got an identification that is almost nailed down. We've got three sensible girls standing up there and never flinching, never turning an eye. Are you going to kick that away like it was trash and rubbish, that kind of identification?

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.